PATRICIA D'AMICOL, ADMINISTRATRIX, ET AL. *v.*
ALVAREZ SHIPPING CO., INC., ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NO. 149900

Memorandum filed September 20, 1973

*Friedman & Friedman,* of Bridgeport, for the plaintiffs.

*Mellitz, Krentzman & Newman,* of Bridgeport, for the defendants.

LEVINE, J. The defendants have filed a motion to correct the complaint by deleting two paragraphs. The motion requests that both paragraphs, which contain allegations of shock and fright to the mother and the father from witnessing the death of their young son, be deleted inasmuch as shock and fright are not recoverable items of damage under Connecticut law. The defendants cite *Strazza* v. *McKittrick,* 146 Conn. 714, 719, and *Lessard* v. *Tarca,* 20 Conn. Sup. 295. Both cases stand for the proposition that a person may not recover for injuries occasioned by fear of threatened harm or injury to the person or property of another. "Even where a plaintiff has suffered physical injury in the accident, there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." *Strazza* v. *McKittrick,* supra, 719. "The general rule that a plaintiff cannot recover damages for nervous shock or mental

anguish at sight of injury to another applies even though the plaintiff also has suffered physical injuries in the same accident." Note, 18 A.L.R.2d 220, 234; *Lessard* v. *Tarca, supra,* 297.

In recent developments in the law, two California cases point out that the better rule is that such damages are recoverable. *Dillon* v. *Legg,* 68 Cal. 2d 728, and *Archibald* v. *Braverman,* 275 Cal. App. 2d 253. The language of the *Dillon* case is repeated here and incorporated herein, since this court is persuaded by the force of the reasoning: "In the absence of 'overriding policy consideration[s] . . . foreseeability of risk [is] of . . . primary importance in establishing the element of duty.' (*Grafton* v. *Mollica* (1965) 231 Cal. App.2d 860, 865 . . . . See also *McEvoy* v. *American Pool Corp.* (1948) 32 Cal.2d 295 . . . ; *Hergenrether* v. *East* (1964) 61 Cal.2d 440 . . . . As a classic opinion states: 'The risk reasonably to be perceived defines the duty to be obeyed.' (*Palsgraf* v. *Long Island R.R. Co.* (1928) 248 N.Y. 339, 344 . . . .) Defendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent, in the first instance. (See Keeton, Legal Cause in the Law of Torts (1963) 18–20; Seavey, *Mr. Justice Cardozo and the Law of Torts* (1939) 52 Harv.L.Rev. 372; Seavey, *Principles of Torts* (1942) 56 Harv.L.Rev. 72.)

"Harper and James state the prevailing view. The obligation turns on whether 'the offending conduct foreseeably involved unreasonably great risk of harm to the interests of someone other than the actor. . . . [T]he obligation to refrain from . . . particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likeli-

hood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails.' (2 Harper & James, The Law of Torts . . . [1956] p. 1018; fns. omitted.)

"This foreseeable risk may be of two types. The first class involves actual physical impact. A second type of risk applies to the instant situation. 'In other cases, however, plaintiff is outside the zone of physical risk (or there is no risk of physical impact at all), but bodily injury or sickness is brought on by emotional disturbance which in turn is caused by defendant's conduct. Under general principles recovery should be had in such a case if defendant should foresee fright or shock severe enough to cause substantial injury in a person normally constituted. Plaintiff would then be within the zone of risk in very much the same way as are plaintiffs to whom danger is extended by acts of third persons, or forces of nature, or their own responses (where these things are foreseeable).' (2 Harper & James, The Law of Torts, *supra,* at pp. 1035–1036; fns. omitted.)[1]

"Since the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty

---

" [1] The concept of the zone of danger cannot properly be restricted to the area of those exposed to *physical* injury; it must encompass the area of those exposed to *emotional* injury. The courts, today, hold that no distinction can be drawn between physical injury and emotional injury flowing from the physical injury; indeed, in the light of modern medical knowledge, any such distinction would be indefensible. As a result, in awarding recovery for emotional shock upon witnessing another's injury or death, we cannot draw a line between the plaintiff who is in the zone of danger of physical impact and the plaintiff who is in the zone of danger of emotional impact. The recovery of the one, within the guidelines set forth *infra,* is as much compelled as that of the other." (68 C.2d at 740.)

or obligation must necessarily be adjudicated only upon a case-by-case basis. We cannot now predetermine defendant's obligation in every situation by a fixed category; no immutable rule can establish the extent of that obligation for every circumstance of the future. We can, however, define guidelines which will aid in the resolution of such an issue as the instant one.

"We note, first, that we deal here with a case in which plaintiff suffered a shock which resulted in physical injury and we confine our ruling to that case. In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

"The evaluation of these factors will indicate the *degree* of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the

accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case.

"In light of these factors the court will determine whether the accident and harm was *reasonably* foreseeable. Such reasonable foreseeability does not turn on whether the particular . . . [defendant] as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected.

"In the instant case, the presence of all the above factors indicates that plaintiff has alleged a sufficient prima facie case. Surely the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma. As Dean Prosser has stated: 'when a child is endangered, it is not beyond contemplation that its mother will be somewhere in the vicinity, and will suffer serious shock.' (Prosser, The Law of Torts . . . [3d ed. 1964] p. 353. See also 2 Harper & James, The Law of Torts, *supra,* at p. 1039.)

"We are not now called upon to decide whether, in the absence or reduced weight of some of the above factors, we would conclude that the accident and injury were not reasonably foreseeable and that therefore defendant owed no duty of due care to plaintiff. In future cases the courts will draw lines of demarcation upon facts more subtle than the compelling ones alleged in the complaint before us. . . .

"Thus we see no good reason why the general rules of tort law, including the concepts of negligence, proximate cause, and foreseeability, long applied to all other types of injury, should not govern the case now before us. Any questions that the cause raises 'will be solved most justly by applying general principles of duty and negligence, and . . . mechanical rules of thumb which are at variance with these principles do more harm than good.' (2 Harper & James, The Law of Torts, *supra*, p. 1039; fn. omitted.) 'The refusal to apply these general rules to actions for this particular kind of physical injury is nothing short of a denial of justice.' (Throckmorton, *Damages for Fright* . . . [1921] 34 Harv.L.Rev. 260, 277; fn. omitted.)" *Dillon* v. *Legg,* 68 Cal. 2d 728, 739–46.

In meeting the requirements or criteria of those cases, the relationship of mother and father to the child is set forth in the pleadings, as is the "nearness" to the scene, since the allegations are that the child, father and mother were together in a vehicle which was involved in the accident, and thus the parents witnessed the injury and death of the child. Manifestly the shock and anguish of seeing their child killed in the tortious occurrence in which they all were involved must have been great and not only foreseeable, as stated in *Dillon* v. *Legg,* supra, but also an understandable and foreseeable direct consequence of the tortious act.

The motion to correct is denied.