Charles E. STADLER, et al., Appellants,

v.

Harry E. CROSS, Jr., et al., Respondents.

No. 49855.

Supreme Court of Minnesota.

July 3, 1980.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne, and O. C. Adamson, II, Minneapolis, Cook & Dokken and Stephen I. Dokken, Faribault, for appellants.

Murnane, Murnane, Conlin & White, Steven J. Krisch and John R. Hoffman, St. Paul, for respondents.

Heard before OTIS, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Plaintiffs brought an action for damages against defendants for negligent infliction of emotional and mental distress arising from the plaintiffs' witnessing of a traffic accident in which defendants' truck struck plaintiffs' child as he crossed a park road. In their answer defendants alleged that plaintiffs had failed to state a claim for which relief could be granted. Plaintiffs moved for a summary judgment dismissing defendants' defense of failure to state a claim. Defendants then moved for summary judgment on the grounds that plaintiffs' affidavits did not present facts to support a legal claim. The trial court originally denied both motions for summary judgment under an erroneous application of Minn.R. Civ.P. 56.01,[1] but upon further consideration after requiring an unusual stipulation from the defendants the court granted defendants' motion. Plaintiffs appeal. We affirm.

Plaintiffs are the parents of a child who was struck by defendants' pickup truck as he crossed a road in Alexander Faribault Park in Faribault, Minnesota, on the evening of September 3, 1975. The child's injuries have reduced him to a state of vegetation such that he does not have meaningful interaction with others.

Mrs. Stadler was conversing with a friend near some tennis courts a few yards from the road when she gave her five-year-old son permission to cross the road in order to play on some swings. Mrs. Stadler did not see the impact, but she heard the screeching brakes and turned in time to see her son fly through the air and hit the pavement.

Mr. Stadler was playing rugby about 100 yards away from the accident scene. Although he was expecting his wife and son to come to the park that evening, he was not aware that they had arrived. He heard the accident and ran to the child. Only then did he realize that the one injured was his son.

In their affidavits plaintiffs state that as a result of witnessing the accident and that as a result of the severe injury to their son, they have suffered emotional and mental distress with resultant physical symptoms. In the procedural posture of this case, these statements are accepted as true.

The truck was driven by defendant Ms. Cross and was owned by defendant Mr. Cross who was a passenger in the truck at the time.

The sole issue is whether bystanders who witness negligently-caused peril of or injury to another have a cause of action if they suffer serious mental and emotional distress with resultant physical manifestations as a result of witnessing the peril or injury. This issue is one of first impression in this jurisdiction.

We have recognized that a person within the zone of danger of physical impact who reasonably fears for his or her own safety and who consequently suffers severe emotional distress with resultant physical injury may recover. *Okrina v. Midwestern Corp.,* 282 Minn. 400, 165 N.W.2d 259 (1969); *Purcell v. St. Paul City Ry.,* 48 Minn. 134, 50 N.W. 1034 (1892). However, we have never

1. The trial court confused the "genuine issue" requirement with the "material facts" requirement. In this case there are many genuine issues of fact including the facts necessary to determine whether the defendants were negligent and whether the plaintiffs suffered severe emotional distress with resultant physical disability. However, unless we were to recognize the right of bystanders to recover, none of the facts are *material* because even if the factfinder resolved every factual dispute in favor of plaintiffs, plaintiffs still would have failed to state a claim.

extended liability to one who is not personally in physical danger. *See Sanderson v. Northern Pac. Ry.*, 88 Minn. 162, 92 N.W. 542 (1902); *Bucknam v. Great Northern Ry.*, 76 Minn. 373, 79 N.W. 98 (1899).

By 1968 most states had forsaken the physical impact rule in favor of the zone-of-danger rule. *E. g. Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 29 Cal. Rptr. 33, 379 P.2d 513 (1963); *Battalla v. State*, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961); *Waube v. Warrington*, 216 Wis. 603, 258 N.W. 497 (1935). In 1968 in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), the California Supreme Court overruled its five-year old decision in *Amaya* and held that a mother who witnessed injury to her daughter had a cause of action even though she was standing beyond the zone of danger. The following year the New York Court of Appeals declined to follow California's lead and denied a mother recovery for the mental shock and fears she suffered as a result of the injury to her two-year-old child. *Tobin v. Grossman*, 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969).[2]

A person's liability for the consequences of her or his actions cannot be unlimited. The limits imposed must be as workable, reasonable, logical, and just as possible. If the limits cannot be consistently and meaningfully applied by courts and juries, then the imposition of liability would become arbitrary and capricious. Consequently, the cause of just apportionment of the losses

would suffer. As the California Supreme Court observed, "Justice * * * exists only when it can be effectively administered." *Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 310, 29 Cal.Rptr. 33, 42, 379 P.2d 513, 522 (1963). Under the zone-of-danger rule the courts and juries can objectively determine whether plaintiffs were within the zone of danger. Furthermore, plaintiffs can be cross-examined regarding whether their fear was for themselves or for another. None of the other proposed limitations can be as readily and consistently applied.

The three limits of closeness in time, place, and relationship advocated by Prosser, W. Prosser, *Handbook of the Law of Torts* § 54 (4th ed. 1971), and adopted in *Dillon v. Legg* are:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Dillon v. Legg*, 68 Cal.2d 728, 740–41, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968).

**2.** Jurisdictions considering the issue since *Dillon v. Legg* and *Tobin v. Grossman* are divided. The states recognizing the claim in addition to California are Hawaii, Massachusetts, New Hampshire, Pennsylvania, and Rhode Island. *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974); *Dziokonski v. Babineau*, —— Mass. ——, 380 N.E.2d 1295 (1978); *Corso v. Merrill*, N.H., 406 A.2d 300 (1979), overruling *Deem v. Newmarket*, 115 N.H. 84, 333 A.2d 446 (1975) and *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *D'Ambra v. United States*, 338 A.d 524 (R.I.1975). In addition, an intermediate appellate court in Michigan has allowed recovery. *Toms v. McConnell*, 45 Mich.App. 647, 207 N.W.2d 140 (1973). Connecticut's lower courts are divided. *Compare D'Amical v. Alvarez Shipping Co.*, 31 Conn.Supp. 164, 326 A.2d

129 (Super.Ct.1973) (recovery allowed) *with McGovern v. Piccolo*, 33 Conn.Supp. 225, 372 A.2d 989 (Super.Ct.1976) (recovery denied). In addition to New York, states which have considered the issue and have denied recovery are Arizona, North Dakota, Tennessee, Vermont, and Washington. *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979); *Whetham v. Bismarck Hospital*, 197 N.W.2d 678 (N.D.1972); *Shelton v. Russell Pipe and Foundry Co.*, Tenn., 570 S.W.2d 861 (1978); *Guilmette v. Alexander*, 128 Vt. 116, 259 A.2d 12 (1969); *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291 (1975). In other states, intermediate appellant courts in opinions and some supreme courts in dicta have rejected such causes of action. *E. g. Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978); *Strickland v. Hodges*, 134 Ga.App. 909, 216 S.E.2d 706 (1975).

These limitations had previously been considered by the *Amaya* court which had critiqued them as follows:

> Professor Prosser suggests the following limitations on liability (Prosser, Torts (1955, 2d ed.) p. 182): First, "It is clear that the injury threatened or inflicted upon the third person must be a serious one, of a nature to cause severe shock to the plaintiff, and that the shock must result in actual physical harm." But what if the plaintiff was honestly mistaken in believing the third person to be in danger or to be seriously injured? And as we are dealing here with a *negligently* caused danger or injury to the third person, what if the latter was contributively negligent? Or assumed the risk involved? Second, "The action might well be confined to members of the immediate family, or perhaps to husband, wife, parent or child, to the exclusion of bystanders, and remote relatives." But what if the third person was the plaintiff's beloved niece or nephew, grandparent, fiancé, or lifelong friend, as dear to the plaintiff as her more immediate family? Third, "the plaintiff must be present at the time of the accident, or at least the shock must be fairly contemporaneous with it, rather than follow at a later date." But how soon is "fairly contemporaneous"? What is the magic in the plaintiff's being "present"? Is the shock any less immediate if the mother does not know of the accident until the injured child is brought home? And what if the plaintiff is present at the scene but is nevertheless unaware of the danger or injury to the third person until shortly after the accident has occurred?
>
> As Professor Prosser concedes, such limitations are quite arbitrary.

*Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 312–13, 29 Cal.Rptr. 33, 43–44, 379 P.2d 513, 523–24 (1963) (emphasis in original) (citation omitted).

No arguments have been presented that persuade us that the problems we see in limiting liability once it is extended beyond the zone of danger of physical impact can be justly overcome.[3] We are satisfied that the line drawn in *Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259 (1969) is the proper one.

Affirmed.

---

3. Other factors frequently considered in these cases but which we do not consider dispositive in light of the problems with limiting liability include the fear of a proliferation of claims, the potential for fraudulent claims, the foreseeability of the injury, and unduly burdensome liability. *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968); *Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 309–10, 29 Cal.Rptr. 33, 40–41, 379 P.2d 513, 521–22 (1963); *Tobin v. Grossman*, 24 N.Y.2d 609, 615, 301 N.Y.S.2d 554, 558, 249 N.E.2d 419, 422–24 (1969); *Waube v. Warrington*, 216 Wis. 603, 613, 258 N.W. 497, 501 (1935).