[No. B001437. Second Dist., Div. Six. Feb. 15, 1985.]

INGA LaVERNE EBARB, a Minor, etc., Plaintiff and Appellant, v. WOODBRIDGE PARK ASSOCIATION, INC., et al., Defendants and Respondents.

COUNSEL

Taylor, McCord, Paul & Johnson and Emily J. Andelman for Plaintiff and Appellant.

Bauer, Harris & McEvoy, Ann G. Diener, Richard D. Aldrich, David C. Byers, Ives, Kirwan & Dibble and Thomas P. Minehan for Defendants and Respondents.

OPINION

**STONE, P. J.**—Inga LaVerne Ebarb, a minor, appeals the entry of summary judgment in defendants' favor on her cause of action for negligent infliction of emotional distress. We affirm the judgment.

On May 30, 1980, Inga's younger brother Tommy died in a tragic accident in the spa/jacuzzi at their condominium complex. Tommy's arm became lodged up to the elbow in the uncovered drain at the bottom of the spa. A bystander's efforts to free Tommy were unsuccessful and Tommy

drowned. After the spa was drained, rescue teams worked for three hours to remove Tommy's body; his arm was still encased in the pipe.

Tommy's mother and father sued various parties for his wrongful death. The complaint included a cause of action by Inga for negligent infliction of emotional distress. This appeal concerns only that cause of action.

Inga alleged that she "was in close proximity to the jacuzzi . . . personally witnessed all or part of said drowning, and personally viewed the body of her brother as it was removed from the jacuzzi." The facts adduced on the motion for summary judgment did not substantiate the crucial part of that claim; i.e., that she "personally witnessed all or part of said drowning." To the contrary, Inga testified at her deposition that she was down the street at the ball park with a friend when the accident occurred. The girls saw a fire truck driving in the direction of the complex as they were walking home. As they approached Inga's apartment, a woman asked for Inga's father. At that time, Inga could see the pool area and knew that something was wrong, but she could not see the spa itself. The woman took Inga to her apartment and kept her there. Inga testified that she knew by the way the woman was acting that Tommy was dead.

Approximately 10 minutes later, Inga went to get the mail and was stopped by a nurse. Inga asked the nurse if Tommy was dead. The nurse responded affirmatively and took Inga back to her apartment. Fifteen to twenty minutes later, Inga managed to elude the nurse and go again to the top of the stairs where she saw Tommy's body floating in the spa and a man attempting to pull him up. Later on, after the spa had been drained and her mother and father had arrived, she accompanied them to the scene and saw Tommy's body in the bottom of the spa, his arm still encased in the drain pipe. It was undisputed, that Inga did not see her brother's arm become lodged in the drain, nor did she see him drown.

■ Inga urges us to expand the "bystander" or "percipient witness" theory of *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] [hereafter *Dillon*] and to allow recovery for the emotional distress suffered by a family member who witnesses the *result* or the *effects* of an accident and not the accident itself. Our analysis of *Dillon* and the cases which have followed compels our conclusion that liability cannot be extended to that degree.

In *Dillon,* the California Supreme Court abandoned the requirement that a plaintiff claiming negligent infliction of emotional distress by witnessing an accident show that he was in the "zone-of-danger" of the accident and fearful for his physical safety. In *Dillon,* mother and daughter witnessed a

younger daughter being hit by a car. The older daughter was within the zone of danger; the mother was not. The court could not justify recovery by the sister and not by the mother. Accordingly, it abandoned the "zone-of-danger" theory and based its decision instead on the long-established principle that the scope of a defendant's duty should be determined by the foreseeability of the harm to the plaintiff. That foreseeability was established on the facts in *Dillon:* "Surely the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma." (*Id.,* at p. 741.)

The court recognized that there was no hard and fast rule by which to determine duty and foreseeability, but did outline certain guidelines: "In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Id.,* at pp. 740-741.)

The issue presented by this appeal is whether Inga's shock resulted from a direct emotional impact upon her as a result of the sensory and contemporaneous *observance of the accident,* as contrasted with learning of the accident from others after its occurrence. We emphasize the phrase "observance of the accident" because that is what has been required to sustain a witness' cause of action for negligent infliction of emotional distress.

Inga urges us to adopt a broad interpretation of the word "contemporaneous." She contends that a "contemporaneous" observance "need not necessarily be instantaneous or simultaneous *with the event,* but rather occur in that general period of time." By that theory, she argues, one who observes the immediate consequences of the "event" may recover.

We note initially that Inga has chosen the word "event," which she argues includes not only the accident itself but also the consequences thereof. That terminology is too broad; the *Dillon* court used the term "accident," and the cases have uniformly held that that term refers to the *moment of the*

*injury* caused by the defendant's negligence. Thus, recovery is denied where relatives arrive on the scene five to thirty minutes after the accident (*Madigan* v. *City of Santa Ana* (1983) 145 Cal.App.3d 607 [193 Cal.Rptr. 593]; *Parsons* v. *Superior Court* (1978) 81 Cal.App.3d 506 [146 Cal.Rptr. 495, 5 A.L.R.4th 826]; *Arauz* v. *Gerhardt* (1977) 68 Cal.App.3d 937 [137 Cal.Rptr. 619]), and, correspondingly, where the observance of the injury occurs after the victim has been transported to the hospital (*Powers* v. *Sissoev* (1974) 39 Cal.App.3d 865 [114 Cal.Rptr. 868]; *Deboe* v. *Horn* (1971) 16 Cal.App.3d 221 [94 Cal.Rptr. 77]).

The cases upon which Inga relies are distinguishable. In *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553 [145 Cal.Rptr. 657], there was a triable issue of fact as to *when* the mother arrived at the pool in which her son was drowning and *what* she observed on her arrival. In *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720], the foster mother was holding the child in her arms at the defendants' insistence when they negligently administered a dangerously high percentage glucose solution which caused the child to become convulsive. Finally, in *Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723], where a youngster was severely maimed by a gun powder blast, the court found the "contemporaneous" requirement satisfied because the mother was nearby and arrived at the scene *immediately* after the injury.[1]

The facts in this case leave no doubt that Inga was not at or near the spa when the accident occurred, that she did not arrive on the scene until her brother was dead, and that she did not observe his body until at least 20 minutes after he drowned. That is not, as a matter of law, a "contemporaneous observance of the accident."

Inga next argues that she is not required to be a "percipient witness" to the accident so long as she perceived the event even if by deduction. She bases this contention on the fact that she said "Tommy's dead," before anyone told her. We do not think the evidence supports that inference. Inga testified that she knew that her brother was dead from the manner in which the woman was preventing her from going to the pool area. That is not the type of "perception" of the accident which allows recovery. It is merely a perception of the result of the accident, i.e., an example of "learning of the accident from others after its occurrence." (*Dillon, supra,* at p. 741.)

---

[1]*Archibald* was the first appellate court decision which applied the *Dillon* analysis. The *Archibald* court relied on *Dillon's* comment that ". . . the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma." (*Dillon,* at p. 741.) We question whether the same result would be reached in view of the later cases.

The California Supreme Court has addressed this issue twice since *Dillon.* In *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], plaintiff husband was sitting in his car while his wife was unloading groceries from the rear. Defendant's car came up on the sidewalk, hit plaintiff's wife, and propelled plaintiff's car forward. The court held that mere presence at the scene was not sufficient. It found that recovery was proper, however, because the husband "knew her position an instant before the impact, observed defendant's vehicle approach her at a high speed on a collision course, and realized that the defendant's car must have struck her." (*Id.,* at p. 76.)

On the other hand, in *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122], two fathers were denied recovery because, although they were in the operating room at the time of their unborn children's deaths, the deaths occurred in the womb and were "by [their] very nature hidden from [the fathers'] contemporaneous perception: [they] could not see the injury to the victim . . . nor could [they] otherwise sense it as in . . . *Krouse.*" (*Id.,* at p. 584.)

On the facts presented here, the "accident" was the lodging of Tommy's arm in the spa drain and his resulting drowning. It was impossible for Inga to be within the realm of perception of that accident; she was at the ball park several blocks away when those events occurred.

Inga's final argument is that she was a *direct victim* of defendants' negligence, and therefore need not meet the *Dillon* guidelines. She relies on *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].

The facts in *Molien* readily distinguish it from a "bystander" case. There, the defendants negligently diagnosed Mrs. Molien's condition as syphilis. They instructed her that she must inform her husband so that he could be examined for the disease. The court held that, under general principles of tort liability, Mr. Molien could recover for the negligent infliction of emotional distress. "It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse; Dr. Kilbridge's advice to Mrs. Molien to have her husband examined for the disease confirms that plaintiff was a foreseeable victim of the negligent diagnosis. Because the disease is normally transmitted only by sexual relations, it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly noxious infidelity." (*Id.,* at p. 923.)

Thus, the court held that Mr. Molien was a direct victim of the defendant's negligent diagnosis because the defendant's negligent conduct was equally directed to him and his wife.

Inga argues that she was a direct victim of the defendant's negligence in this case because "it is reasonably foreseeable that close family members would be near the pool and that the horrifying scene after death created by the [negligence of the defendants] would cause distress different in kind than that suffered by other people after the death of a child or brother, because the *effects of the negligent acts continued after the death had occurred.*"

There are two problems with this argument. First, the effect of the negligent act in this case was the unusual and lengthy procedure required to extricate Tommy's body from the spa. We have no quarrel with the fact that that tragic circumstance would cause distress different in kind than that suffered by other people who experience the loss of a loved one. However, it is the unusual nature of the rescue operation which places Inga's reaction thereto outside the scope of reasonable foreseeability.

Second, we cannot stretch the concept of duty so far as to render Inga a direct victim of the defendant's negligence in this case. ■ "In order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable. [¶] In the absence of 'overriding policy considerations . . . foreseeability of risk [is] of . . . primary importance in establishing the element of duty.' [Citations.] As a classic opinion states: 'the risk reasonably to be perceived defines the duty to be obeyed.' (*Palsgraf* v. *Long Island R.R. Co.* (1928) 248 N.Y. 339, 344 [162 N.E. 99, 59 A.L.R. 1253].) Defendant owes a duty, in the sense of a potential liability for damages, only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent, in the first instance. [Citations.]" (*Dillon, supra,* at p. 739.)

■ In this case, the risk or hazard whose likelihood made the defendants' conduct unreasonably dangerous was the possibility that someone would become caught in the drain and, unable to extricate themselves, might drown. Therefore, Tommy was the only direct victim of the defendants' negligence. Inga's emotional distress is derived solely from the injury to him (see, e.g., *Wiggins* v. *Royale Convalescent Hospital* (1984) 158 Cal.App.3d 914, 917-918 [206 Cal.Rptr. 2]; *Miller* v. *Superior Court* (1984) 161 Cal.App.3d 1205 [208 Cal.Rptr. 25]) and, in order to recover damages for that injury, she must meet the bystander guidelines outlined by

*Dillon* and its progeny. Because we concluded above that she cannot do so, the judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.