JOHN LEE JAMES AND EDNA DELORIS JAMES, AS PARENTS AND
NEXT FRIENDS OF GREGORY DUWAYNE JAMES, AND AS
INDIVIDUALS, APPELLANTS, V. JOHN MILTON LIEB AND WATTS
TRUCKING SERVICE, INC., APPELLEES.

375 N.W.2d 109

Filed October 25, 1985.    No. 84-254.

David J. Cullan of Cullan, Cullan & Morrison, for appellants.

Daniel P. Chesire and Stuart M. Paulson of Kennedy, Holland, DeLacy & Svoboda, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal in a negligence action from an order of the district court for Douglas County sustaining the defendants' demurrer to plaintiffs' petition for failure to state a cause of action.

The following facts were alleged in the petition. On August 10, 1983, plaintiffs' son, Gregory Duwayne James, and their daughter, Demetria, were riding their bicycles north on 50th Street in Omaha, Nebraska. A garbage truck owned by the defendant Watts Trucking Service, Inc., and driven by its employee, John Milton Lieb, was backing west on Spaulding Street. The truck backed into the intersection of 50th and Spaulding Streets, through a stop sign, and hit and ran over Demetria, killing her. Gregory helplessly watched the entire incident. As a result of witnessing his sister's peril, Gregory became physically ill and suffered, and will continue to suffer, mental anguish and emotional distress.

In ruling on a demurrer we are obligated to accept the plaintiffs' well-pleaded facts, as distinguished from conclusions, as true. *Allen v. County of Lancaster*, 218 Neb. 163, 352 N.W.2d 883 (1984).

The defendants demurred, contending that since plaintiffs' petition failed to allege that Gregory was within the "zone of danger" or in fear for his own safety, no cause of action for emotional distress had been asserted under Nebraska law. Based upon our prior holding in *Fournell v. Usher Pest Control Co.*, 208 Neb. 684, 305 N.W.2d 605 (1981), the trial court dismissed the petition. To the extent that *Fournell* is in conflict

with this opinion, it is expressly overruled, and we therefore reverse and remand this cause for further proceedings in accordance with this opinion.

In *Fournell* a young woman and her husband brought suit against a pest control company, alleging negligence concerning a termite inspection of the couple's home. The evidence showed that she had suffered mental and emotional disturbances as a result of discovering termite infestation and damage to her home. The majority in that case held that, under Nebraska law, to state a claim for negligent infliction of emotional distress or trauma, a plaintiff must first show that some type of *physical* injury resulted from the emotional trauma and, secondly, that he or she was within the " 'zone of danger or actually put in fear for his [or her] own safety.' " *Fournell, supra* at 687, 305 N.W.2d at 607. See *Owens v. Childrens Memorial Hospital, Omaha, Nebraska*, 347 F. Supp. 663 (D. Neb. 1972). The majority found Mrs. Fournell's petition failing in both regards, claiming damages solely for mental and emotional distress, and affirmed the district court's order of summary judgment for the defendant. Two members of this court joined in dissent. In their opinion mental injury alone should have been compensable, but at the very least the facts of the case showed that plaintiff had suffered a bodily injury from the emotional disturbances as required by Restatement (Second) of Torts § 436 A (1965), adopted by the majority.

*Fournell* concerned potential recovery by an alleged "direct victim" of the defendant's negligence. The issue of first impression presented to us in this case is whether and under what circumstances a bystander may recover for negligent infliction of emotional distress. The term "bystander" throughout this opinion refers to those persons who are not immediately threatened with physical injury nor placed in fear for their own safety by the defendant's negligence.

Under the "zone of danger" rule followed by this court in *Fournell*, other jurisdictions have allowed bystanders to recover for emotional distress only if they (1) were within a physical "zone of danger," (2) feared for their own safety, and (3) suffered physically manifested mental or physical injuries as a result of this fear. See, *Tobin v. Grossman*, 24 N.Y.2d 609, 249

N.E.2d 419, 301 N.Y.S.2d 554 (1969); *Waube v. Warrington*, 216 Wis. 603, 258 N.W. 497 (1935). However, other "zone of danger" jurisdictions have allowed bystanders to recover damages for "fear for the safety of another," so long as the plaintiff was also at personal risk. See, *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668 (1979); *Bowman v. Williams*, 164 Md. 397, 165 A. 182 (1933). The latter view is in accordance with Restatement (Second) of Torts § 436 (1965), which would allow recovery when a family member is within the zone of danger but his or her emotional distress arises from fear for another's safety.

The reasoning behind this exception to the general rule denying recovery for the emotional distress arising from the fear for another is that once the defendant is found to have breached an original duty owing to the plaintiff, he should not be relieved of liability for the resulting unexpected or unusual bodily harm to the plaintiff. The Restatement, *supra* § 436, comment *f.*; Prosser and Keeton on the Law of Torts, *Limited Duty* § 54 (5th ed. 1984).

The "zone of danger" rule in general has been defended as a more rational means of determining liability than the "impact" rule which it replaced and which was abandoned by this court in *Rasmussen v. Benson*, 133 Neb. 449, 275 N.W. 674 (1937). The "zone of danger" rule supposedly provided the internal consistency lacking in its precursor. The "impact" rule denied damages for emotional distress unless the plaintiff also suffered a contemporaneous physical impact: an event logically unrelated to interest sought to be protected—fear for one's own safety. See, generally, Annot., 64 A.L.R.2d 100 (1959).

Advocates of the "zone of danger" rule also argue that it provides workable, reasonable limits to the liability of a potential defendant. *Stadler v. Cross*, 295 N.W.2d 552 (Minn. 1980). "Under the zone-of-danger rule the courts and juries can objectively determine whether plaintiffs were within the zone of danger. Furthermore, plaintiffs can be cross-examined regarding whether their fear was for themselves or for another." *Stadler, supra* at 554. The "zone of danger" rule is currently followed by several jurisdictions. See, generally, Winter, *A Tort in Transition: Negligent Infliction of Mental Distress*, 70 A.B.A. J. 62 (1984).

However, in 1968 the California Supreme Court became the first jurisdiction to abolish the "zone of danger" rule and allow a bystander to recover for negligently inflicted emotional distress in its now landmark decision of *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). Since that time, a growing number of jurisdictions have taken another look at this tort and have either adopted or modified the *Dillon* approach and allowed bystander recovery for negligent infliction of emotional distress. See, *Versland v. Caron Transport*, ____ Mont. ____, 671 P.2d 583 (1983); *Apache Ready Mix Co., Inc. v. Creed*, 653 S.W.2d 79 (Tex. App. 1983); *Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983); *Paugh v. Hanks*, 6 Ohio St. 3d 72, 451 N.E.2d 759 (1983); *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433 (Me. 1982); *Entex, Inc. v. McGuire*, 414 So. 2d 437 (Miss. 1982); *Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981); *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979); *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295 (1978); *D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975); *Leong v. Takasaki*, 55 Hawaii 398, 520 P.2d 758 (1974); *Toms v McConnell*, 45 Mich. App. 647, 207 N.W.2d 140 (1973); *D'Amicol v. Alvarez Shipping Co.*, 31 Conn. Supp. 164, 326 A.2d 129 (1973).

In *Dillon* the plaintiffs, a mother and daughter, both witnessed an accident in which another daughter was struck and killed by a negligent driver. Arguably, the sister of the victim was within the zone of danger; her mother was not. In the view of the California Supreme Court, the facts of *Dillon* illustrated the fallacy of the "zone of danger" rule, which would deny recovery to one plaintiff, the mother, and allow recovery to the daughter. In the court's view, relief for the trauma equally suffered by both plaintiffs upon the apprehension of the child's death should not be based on the happenstance of a few yards. *Dillon, supra.*

At the outset of its discussion the *Dillon* court recognized that any claim for bystander recovery must necessarily be based on the defendant's adjudicated liability and fault for the injury or death of the victim. Without such fault there is no

"foundation for the tortfeasor's duty of due care to third parties who, as a consequence of such negligence, sustain emotional trauma." *Dillon, supra* at 733, 441 P.2d at 916, 69 Cal. Rptr. at 76.

In analyzing the issue the court noted that normally

the simple facts of plaintiff's complaint would establish a cause of action: the complaint alleges that defendant drove his car (1) negligently, as a (2) proximate result of which plaintiff suffered (3) physical injury. Proof of these facts to a jury leads to recovery in damages; indeed, such a showing represents a classic example of the type of accident with which the law of negligence has been designed to deal.

*Dillon, supra* at 733-34, 441 P.2d at 916, 69 Cal. Rptr. at 76.

It has been similarly stated that

[i]n Nebraska, a determination of "proximate cause" consists of three elements: (1) negligence without which injury would not have occurred, (2) injury which is the natural and probable consequence of the negligence and (3) the absence of an efficient, intervening cause breaking the causal connection between the injury and the acts or omissions of negligence.

*Petznick v. United States*, 575 F. Supp. 698, 709 (D. Neb. 1983).

Quoting from Prosser, the *Dillon* court continued, stating:

The assertion that liability must nevertheless be denied because defendant bears no "duty" to plaintiff "begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . But it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts, *supra*, at pp. 332-333.)

*Dillon v. Legg*, 68 Cal. 2d 728, 734, 441 P.2d 912, 916, 69 Cal. Rptr. 72, 76 (1968).

The interest worthy of legal protection presented by bystander cases such as the one before us was best described by

the New Jersey Supreme Court when it adopted *Dillon*:

> [T]he interest assertedly injured is more than a general interest in emotional tranquility. It is the profound and abiding sentiment of parental love. The knowledge that loved ones are safe and whole is the deepest wellspring of emotional welfare. Against that reassuring background, the flashes of anxiety and disappointment that mar our lives take on safer hues. No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure.

*Portee v. Jaffee*, 84 N.J. 88, 97, 417 A.2d 521, 526 (1980). We find the profound and abiding love for one's sibling to be no less significant.

In its analysis the *Dillon* court reversed its position on the concept of a limited duty precluding liability to a plaintiff outside the zone of physical danger. According to the court, "the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case." *Dillon, supra* at 740, 441 P.2d at 920, 69 Cal. Rptr. at 80. The court acknowledged, though, that

> [i]n order to limit the otherwise potentially infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable.
>
> In the absence of "overriding policy considerations . . . foreseeability of risk [is] of . . . primary importance in establishing the element of duty."

*Dillon, supra* at 739, 441 P.2d at 919, 69 Cal. Rptr. at 79.

While recognizing that "no immutable rule" could establish the defendant's duty for every future case, the court suggested the following "guidelines" as aids in resolution of bystander claims:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and

contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Dillon, supra* at 740-41, 441 P.2d at 920, 69 Cal. Rptr. at 80.

We note that the facts of the instant case squarely fit within these guidelines. While these guidelines have also been called arbitrary, see Prosser and Keeton on the Law of Torts, *Limited Duty* § 54 (5th ed. 1984), we believe the *Dillon* approach based upon the reasonable foreseeability of the harm to be a more logical and just method of determining a defendant's liability than the artificial boundaries of recovery drawn by the "zone of danger" rule.

Subsequent California cases have applied these guidelines with varying degrees of strictness. See, *Krouse v. Graham*, 19 Cal. 3d 59, 562 P.2d 1022, 137 Cal. Rptr. 863 (1977) (court noted that direct emotional impact from sensory and con-temporaneous observance did not require plaintiff to actually see the accident); *Archibald v. Braverman*, 275 Cal. App. 2d 253, 79 Cal. Rptr. 723 (1969) (plaintiff mother allowed to recover when she *immediately* arrived on the scene *after* the injury); *Jansen v. Children's Hospital Medical Center*, 31 Cal. App. 3d 22, 106 Cal. Rptr. 883 (1973) (interpreting *Archibald* as allowing recovery because mother heard explosion and experienced a contemporaneous sensory perception). But see, *Ebarb v. Woodbridge Park Ass'n, Inc.*, 164 Cal. App. 3d 781, 210 Cal. Rptr. 751 (1985); *Parsons v. Superior Court for Cty. of Monterey*, 81 Cal. App. 3d 506, 146 Cal. Rptr. 495 (1978); *Arauz v. Gerhardt*, 68 Cal. App. 3d 937, 137 Cal. Rptr. 619 (1977) (mother denied recovery for arriving at scene after the accident occurred).

Generally, commentators believe, based upon recent cases, that California courts will require strict adherence to and will mechanically apply the *Dillon* guidelines in bystander recovery cases. See, e.g., Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries*, 35 Hastings L.J. 477 (1984); Comment, *Negligent Infliction of Emotional Distress: A Proposal for a*

*Recognized Tort Action*, 67 Marq. L. Rev. 557 (1984).

Our review of the *Dillon* line of cases leads us to the same conclusion the Ohio Supreme Court reached: "These factors were not intended to be fixed guidelines with which an aggrieved plaintiff-bystander was required to satisfy in order to recover; rather, the factors were to be taken into account by courts in assessing the degree of foreseeability of emotional injury to the plaintiff." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 76, 451 N.E.2d 759, 764 (1983). In an action for negligent infliction of emotional distress, as in any negligence action, "[n]egligence must be measured against the particular set of facts and circumstances present in each case." *McGinn v. City of Omaha*, 217 Neb. 579, 585, 352 N.W.2d 545, 549 (1984). Accord *Haught v. Maceluch*, 681 F.2d 291 (5th Cir. 1982).

We adopt the foreseeability approach of *Dillon*, with the following comments and modifications.

First, of the three *Dillon* factors the relationship between the plaintiff and victim is the most valuable in determining foreseeability, and therefore the most crucial. *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980); *D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975). As the Rhode Island Supreme Court stated, "Personal relationship may link people together more tightly, if less tangibly, than any mere physical and chronological proximity." *D'Ambra, supra* at 656-57, 338 A.2d at 531. Furthermore, medical authorities are generally in agreement that a mere bystander who has no significant relationship with the victim will not suffer the profound, systematic mental and emotional reaction likely to befall a close relative as a result of witnessing or learning of the victim's death. See, Diamond, *supra*; Leibson, *Recovery of Damages for Emotional Distress Caused by Physical Injury to Another*, 15 J. Fam. L. 163 (1977).

To satisfy this factor we choose not to require a relationship within a certain degree of consanguinity, as the Iowa Supreme Court did. *Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981). Rather, we will require that there be a marital or intimate familial relationship between the plaintiff and the victim.

This particular facet of *Dillon* was sharply criticized by the court in *Tobin v. Grossman*, 24 N.Y.2d 609, 615, 249 N.E.2d

419, 422, 301 N.Y.S.2d 554, 558 (1969):

> But foreseeability, once recognized, is not so easily limited. Relatives, other than the mother, such as fathers or grandparents, or even other caretakers, equally sensitive and as easily harmed, may be just as foreseeably affected. Hence, foreseeability would, in short order, extend logically to caretakers other than the mother, and ultimately to affected bystanders.

We believe this fear is unfounded. For if we require, as Professor Leibson suggests, "evidence of a close relationship between the plaintiff and the victim, one in which there was a strong bond between the two, it will be apparent that, in most cases involving relatives other than immediate family members, the evidence will not be sufficient to establish such a relationship." Leibson, *supra* at 198. The explanation for this insufficiency, according to Leibson, lies in the nature of our modern families. Today the extended family often has limited involvement in day-to-day activities of other family members and relatives and, therefore, would not typically possess the strong bond necessary to meet the test.

Our holding would not eliminate aunts, uncles, and grandparents from the class of potential plaintiffs, but would place upon them a heavier burden of proving a significant attachment.

Second, we address the factor that plaintiff's shock result from a "sensory and contemporaneous observance of the accident." No other aspect of the *Dillon* decision has drawn more attention than this factor. We agree with the observation of the Montana Supreme Court that if a "plaintiff is required to experience actual sensory perception of the accident, the requirement of proximity is necessarily satisfied." *Versland v. Caron Transport*, ____ Mont. ____, ____, 671 P.2d 583, 586 (1983). It has been suggested that the requirements of physical proximity and "contemporaneous observation" impugn the integrity of the *Dillon* approach and that *Dillon* has merely replaced the arbitrary spatial boundary of the "zone of danger" rule with an arbitrary temporal boundary. See Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries*, 35 Hastings

L.J. 477 (1984).

It is true in cases such as the one before us that the contemporaneous observation guideline would serve to assure the minds of a jury that the emotional injury is serious. However, if a sufficiently close relationship exists, the psychological reaction of the plaintiff in many cases could be the same or perhaps worse upon the hearing of the loss. See Leibson, *supra.*

Rather, this guideline is, in effect, a policy consideration concerning the extent of the defendant's liability. As one court has stated, "Without such perception, the threat of emotional injury is lessened and the justification for liability is fatally weakened. The law of negligence, while it redresses suffering wrongfully caused by others, must not itself inflict undue harm by imposing an unreasonably excessive measure of liability." *Portee v. Jaffee*, 84 N.J. 88, 99, 417 A.2d 521, 527 (1980).

We believe that the Massachusetts Supreme Court has a better perspective on this criterion. The determination of liability for the injury sustained "depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship . . . ." *Dziokonski v. Babineau*, 375 Mass. 555, 568, 380 N.E.2d 1295, 1302 (1978).

> A plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital. So long as the shock follows closely on the heels of the accident, the two types of injury are equally foreseeable.

*Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 518, 413 N.E.2d 690, 697 (1980).

In addition to proving a sufficiently close relationship, we hold that the emotional trauma, the foreseeable harm to be redressed, must result from either death or serious injury to the victim. While minor injuries to a loved one may trigger emotions of sorrow and anxiety, these emotions pale in comparison to the profound grief, fright, and shock experienced following an accidental death or serious injury.

See, *Portee v. Jaffee, supra*; *Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983).

Before concluding, we must also address the further requirement of a cause of action for emotional distress in *Fournell v. Usher Pest Control Co.*, 208 Neb. 684, 305 N.W.2d 605 (1981), that plaintiff must evidence some concurrent physical injury resulting from the emotional trauma. Other courts adopting the *Dillon* approach, to a certain degree, have retained this feature of the "zone of danger" rule. See, e.g., *Ramirez v. Armstrong, supra*; *Barnhill v. Davis*, 300 N.W.2d 104 (Iowa 1981); *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979). We now reject this requirement for many of the reasons stated in the Chief Justice's dissent in *Fournell, supra* at 697, 305 N.W.2d at 611: "To . . . require that, before one who is mentally injured may recover, he must at least regurgitate once seems . . . to be imposing upon the law a requirement that makes little or no sense."

Ostensibly, the problem in this area is of proving to a jury that a reasonable person in the position of the bystander plaintiff has suffered a compensable injury. While physical manifestation of the psychological injury may be highly persuasive, such proof is not necessary given the current state of medical science and advances in psychology. There are primarily three problems with this requirement: (1) It is overinclusive, since it could possibly lead to recovery for trivial claims of mental distress accompanied by physical symptoms; (2) It is underinclusive, since serious distress is arbitrarily deemed not compensable if not accompanied by physical symptoms; and (3) It encourages extravagant pleadings and distorted testimony. See, *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 916, 616 P.2d 813, 167 Cal. Rptr. 831 (1980); *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433 (Me. 1982); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Paugh v. Hanks*, 6 Ohio St. 3d 72, 451 N.E.2d 759 (1983).

In reaching our decision we are not unmindful of the several policy arguments advanced against the cause of action we have adopted. Typically, opponents of expanding liability in this area contend that (1) bystander recovery will inundate the courts with fictitious injuries and fraudulent claims; (2) courts will be

deluged with a flood of litigation; (3) bystander recovery will unduly burden defendants with undue liability; and (4) once recognized, liability cannot reasonably be restrained. Each of these arguments have been adequately reflected by other courts. See, *Sinn v. Burd, supra*; *Culbert v. Sampson's Supermarkets Inc., supra*. We add the following comments.

First, even courts opposed to recognizing this cause of action have acknowledged that the fear of fraudulent claims alone is an insufficient reason to deny all such claims. See *Tobin v. Grossman*, 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969). Furthermore, the "zone of danger" rule also carries with it the risk of fraudulent claims. "It is not hard to imagine plaintiffs and their attorneys falsely alleging that the claimant was in some small way injured by the defendant's negligence, or was within the zone of danger in order to present a valid cause of action." Leibson, *Recovery of Damages for Emotional Distress Caused by Physical Injury to Another*, 15 J. Fam. L. 163, 174 (1977). Also, it is not unlikely that under a "zone of danger" rule plaintiffs would carefully draft pleadings so as to vaguely present a factual question that the plaintiff was also in peril. Leibson, *supra*.

Second, taking California as an example, experience shows that its courts have not been overwhelmed with litigation in this area. See *Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983).

Third, the "dollars and cents" argument that society cannot afford the costs that will ensue from recognizing liability for the demonstrable injury of emotional distress naturally resulting from defendant's negligent act has been aptly dispelled. See *D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975). The possibility of increased insurance costs alone should not deny recovery for an otherwise valid claim.

Finally, we are not delayed by the specter that recognizing a cause of action for bystander recovery will naturally entail liability to every acquaintance of the victim. As we have emphasized, the class of bystanders limited to those with a marital or intimate familial status will sufficiently circumscribe the defendant's liability.

In summary, we hold that a plaintiff bystander has a cause of

action for negligently inflicted foreseeable emotional distress upon a showing of marital or intimate familial relationship with a victim who was seriously injured or killed as a result of the proven negligence of a defendant. We thus find error in the district court's order sustaining the defendants' demurrer.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

KRIVOSHA, C.J., concurring.

I am in complete agreement with the majority in this case. I write separately because I believe that our decision in the instant case has not only moved us from the "zone of danger" rule to a modified "foreseeability" rule in cases of this nature but also stands for the proposition that from this point forward one in Nebraska may recover for emotional distress proximately caused by the defendant's negligence even if no physical injury is sustained.

CAPORALE, J., dissenting.

I dissent. In the past, Nebraskans were required to bear the cost of compensating one's physically manifested fear for his or her own safety. *Fournell v. Usher Pest Control Co.*, 208 Neb. 684, 305 N.W.2d 605 (1981). Now, Nebraskans are required to bear the more onerous cost of compensating one's psychic pain over the injury of another.

Contrary to the view of the majority, the "dollars and cents" argument has not been dispelled, at least not for me. The harsh reality is that there are societal costs to compensating for accidents; the greater the number of elements of damage, the greater are those costs. See G. Calabresi, The Costs of Accidents, A Legal and Economic Analysis 22, 23, 26, 27, 215-25 (1977). I find nothing in the record before us, or the majority opinion, which deals with those arguments other than the bald assertion that they have been "aptly dispelled." The case to which the majority opinion cites as supporting that statement, *D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975), does nothing of the sort. The *D'Ambra* opinion makes it quite clear that, in the judgment of that court, the economic policy issues were "no bar to an extension of potential liability." *Id.* at 654, 338 A.2d at 530. That approach, I respectfully suggest, dispels nothing; the costs are still there.

Of course, Nebraska's earlier "zone of danger" rule was arbitrary, but the "bystander recovery" rule is no less so. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules*, 34 U. Fla. L. Rev. 477 (1982). The "zone of danger" rule at least had the virtue of being susceptible to more objective proof.

That observation leads to another concern. The dispersive nature of the majority opinion, and the Chief Justice's concurring opinion, leaves me with no clear notion of what the majority envisions the limits of the rule to be. I recognize that the opinion must be read in the context of the facts pled in this case, but I respectfully suggest that the matter would have been left in a less confusing state if the majority opinion had limited itself to a consideration of those facts.

I would have affirmed the district court's order of dismissal. BOSLAUGH and HASTINGS, JJ., join in this dissent.