[Nos. A039468, A039770. First Dist., Div. Four. Feb. 9, 1989.]

CECILIA BUENAVISTA et al., Plaintiffs and Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

**COUNSEL**

Caldwell & Johnson, Edwin T. Caldwell, Sarrail & Russell, Michael J. Ruggles and Thomas J. Williams for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Dennis Aftergut, Assistant City Attorney, Kimberly A. Reiley and John A. Peak, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**PERLEY, J.**—Plaintiffs in these consolidated actions (collectively, appellants) appeal from summary judgment entered against them on the motion

of defendants City and County of San Francisco et al. (collectively, the city).[1] Appellants asserted claims under state law and 42 United States Code section 1983 (hereinafter section 1983) arising out of a series of attacks by a mental patient following his escape from San Francisco General Hospital (the hospital). The court below ruled that the city was immune under state law by virtue of Government Code section 856.2, subdivision (a)(1) (hereinafter section 856.2), and found that the facts did not support appellants' claims under section 1983. We affirm.

## I. FACTS

The events leading to appellants' injuries may be summarized as follows. Eric Jordan (Jordan), a 23-year-old paranoid schizophrenic with a history of violent behavior, sought admission to the hospital's psychiatric unit in the early morning hours of May 10, 1982. He was escorted to the hospital by the police and upon arrival he was treated with haldol, a tranquilizer. He was then placed in an unlocked area, where he waited with his parents for a hospital employee to process his admission on a 72-hour psychiatric hold under Welfare and Institutions Code section 5150. The area was unsupervised apart from this one employee, who sat absorbed in paperwork with his back to Jordan. Jordan became increasingly agitated, began moving about in the waiting area and asked repeatedly when his room would be ready. Eventually, he walked out of the waiting area and left the hospital. A few minutes after his escape, Jordan initiated a series of brutal, random assaults on people in the neighborhood of the hospital, killing an elderly woman and injuring several others before he could be apprehended.

According to appellants' evidence, this tragedy was the product of preexisting security problems at the hospital's psychiatric unit, and a mishandling of Jordan on the morning in question. Appellant's documentary and testimonial evidence in opposition to summary judgment may be outlined as follows.

Concerns over inadequate safety and security were voiced by the director and staff of the psychiatric unit as early as 1979. The staff complained about inadequate space in a 1979 memorandum to the unit's medical and administrative directors. They stated that: "At times we may have 3 or 4 'hold'

---

[1] The city's brief states that there are no individual defendants in this case. The City and County of San Francisco and San Francisco General Hospital are specified as defendants in the complaints. There is no basis for distinguishing between the liability of these two entities herein. Since San Francisco General Hospital is owned and managed by the City and County of San Francisco, both are "public entities" under Government Code section 856.2. A city hospital is also treated as a municipal entity for purposes of claims under 42 United States Code section 1983. (See *United States* ex rel. *Gittlemacker* v. *County of Philadelphia* (3d Cir. 1969) 413 F.2d 84, 86 [city hospital stands in shoes of city under this statute].)

patients in the waiting area. This is a very serious hazard to employee's and patient's welfare." In another 1979 memorandum, the unit's director advised the chief of the hospital's department of psychiatry that: "The main PES door can only be locked from the outside . . . . By putting a lock on the inside, we can close the area when necessary and contain patients, cutting down on AWOL's." A preexisting escape problem may be inferred from this reference to "AWOL's," and the deposition testimony of Dr. Moskowitz and Mr. Mariacher. A 1980 memorandum from the director to the staff promised to "work on" permanent funding for a security officer to be assigned to the unit "during as many hours as needed." However, no interior lock had been installed as of May 10, 1982, and no security guard was present when Jordan escaped.

It appears that the hospital was in violation of one or more state regulations by virtue of the foregoing problems. (See, e.g., Cal. Code Regs., tit.22, §§ 70209 [adequate space], 70701, subd. (a)(3) [appropriate physical resources and personnel], 70837, subd. (a) [safety services and procedures].) According to the testimony of Dr. Hopkin, the hospital modified its "elopement precautions policy and procedures" shortly after Jordan's escape. From this it may be inferred that such procedures were inadequate on the morning in question.

It also appears from appellants' evidence that the hospital's staff made several mistakes in their handling of Jordan. Based on the records of a prior admission, the hospital's personnel knew or should have known that he could be dangerous. However, rather than mollify Jordan, he was engaged in a shouting match upon arrival by one of the employees. The evidence suggests that the effects of haldol can be "unpredictable," that haldol is known to cause a condition of restlessness in schizophrenics and that this condition can manifest in violence. However, Jordan was left unsupervised and unrestrained after this medication was administered. The evidence also suggests that Jordan was given twice the proper dosage. A doctor has opined that Jordan would not have gone on his rampage but for the injection of haldol.

The situation thus presented is that of a "disaster waiting to happen," and a mental patient who desires confinement but is treated in a way that compels him to escape. ■ ■■■■ Viewed in the light most favorable to appellants,[2] the foregoing evidence could support findings of gross negligence or reckless disregard on the part of the city and its employees.

---

[2] There is authority to the effect that a California court should apply federal procedural standards in section 1983 cases if state standards are stricter and their application could abridge a federal right. (See *Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 561-563 [195 Cal.Rptr. 268] [sufficiency of section 1983 complaint measured by "notice pleading"

The city's motion for summary judgment was based on three uncontested facts: that Jordan was confined to the hospital on a 72-hour hold; that he was an escaped psychiatric patient when he committed the attacks; and that he had no prior relationship with any of his victims.

## II. DISCUSSION

### A. *Claims Under State Law*

 We agree with the trial court that the city is immune from any claims under state law by virtue of section 856.2, which provides that "[n]either a public entity nor a public employee is liable for: [¶] (1) [a]n injury caused by an escaping or escaped person who has been confined for mental illness or addiction." ██ ██ Since a person on a 72-hour psychiatric hold is "confined" for purposes of section 856.2 even if he or she is left unrestrained and unattended (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 461, 463 [202 Cal.Rptr. 222]), this case falls squarely within the statute and appellant's state law claims must fail.[3] Neither the city's negligence nor regulatory violations associated with its facility would negate its immunity under section 856.2. (*Id.* at pp. 462-463; *Forde* v. *County of Los Angeles* (1976) 64 Cal.App.3d 477, 480 [134 Cal.Rptr. 549].) A finding of gross negligence or reckless indifference would not change the result. (See *Clayton* v. *City of Sunnyvale* (1976) 62 Cal.App.3d 666, 671 [133 Cal.Rptr. 306].) It is "assume[d] as a matter of course that there is a basis for liability to which the immunity is relevant." (*Forde* v. *County of Los Angeles, supra,* at p. 481.)

A commentator has suggested that despite the immunity conferred under section 856.2, "liability might obtain for injuries inflicted on third parties by the escaped mental patient if an independent basis of fault existed, apart from any wrongful act or omission that made the escape possible." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980)

---

standard of Federal Rules of Civil Procedure rather than California "code pleading" requirements].) The standards for summary judgment, however, are basically the same under California and federal law. (Compare Code Civ. Proc., § 437c with Fed. Rules Civ.Proc., rule 56(c).) For purposes of summary judgment, a California court must consider all inferences reasonably deducible from the evidence submitted (see *Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 185 [163 Cal.Rptr. 912]), strictly construe the moving party's affidavits (see *Weichman* v. *Vetri* (1950) 100 Cal.App.2d 177, 179 [223 P.2d 288]), and liberally construe the counteraffidavits (see *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264]). Similarly, a federal court will read the record in the light most favorable to the non-moving party. (*Lew* v. *Kona Hospital* (9th Cir. 1985) 754 F.2d 1420, 1423.)

[3] Since we conclude that the city's section 856.2 immunity is dispositive of appellants' state law claims, we need not determine whether the city would also be immune under Government Code section 854.8.

§ 4.51, p. 407.) This suggestion is based on an expansive reading of *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], which held that state psychiatrists could be liable for negligent failure to warn an individual threatened by their patient, notwithstanding their statutory immunity from any claim based on failure to have the patient committed. Appellants argue that, like the failure to warn in *Tarasoff,* the injection of haldol creates an "independent basis" for the imposition of liability in this case.

We reject this contention for three reasons. First, we are unaware of any case that has applied *Tarasoff* in the foregoing manner to a claim covered by section 856.2. Second, unlike the patient in *Tarasoff,* Jordan did not threaten any specific individual. Third, even if the above-described principle could be gleaned from *Tarasoff,* the evidence is that Jordan would not have escaped but for the treatment with haldol. Therefore, as noted by the trial court, administration of the drug was not "independent" of conduct that made the escape possible.

We conclude that appellants' causes of action under state law are barred by section 856.2.

### B. Claims Under Section 1983

In support of their section 1983[4] claims, appellants alleged deprivation of their constitutional rights to life and liberty by actions and omissions of the city under color of state law. (See *Ellsworth* v. *City of Racine* (7th Cir. 1985) 774 F.2d 182, 187 [due process "encompasses a right to be free from 'unjustified intrusions on personal security' "].) ██ The state immunity statute does not shield the city from liability under section 1983. (*Martinez* v. *California* (1980) 444 U.S. 277, 284 [62 L.Ed.2d 481, 488-489, 100 S.Ct. 553].) ██ However, the evidence discloses neither a "special relationship" between the city and Jordan's victims, nor a basis for attributing the overdosage of haldol to a municipal policy or custom. As a consequence, appellants' section 1983 claims must also fail.

██ State courts look to federal law to determine what conduct will support an action under section 1983. (*Bach* v. *County of Butte, supra,* 147 Cal.App.3d at p. 560.) ██ A host of federal precedents indicate that

---

[4]Section 1983 provides in pertinent part that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

injuries inflicted by a private party do not give rise to section 1983 liability in the absence of a "special relationship" between the state and the victim. (See, e.g., *Estate of Gilmore* v. *Buckley* (1st Cir. 1986) 787 F.2d 714, 719-723; *Fox* v. *Custis* (4th Cir. 1983) 712 F.2d 84, 88; and *Ketchum* v. *Alameda County* (9th Cir. 1987) 811 F.2d 1243.)

"Admittedly, 'the contours of what constitutes a "special relationship" between a municipality, acting through its officials, and its citizens are hazy and indistinct.'" (*Wideman* v. *Shallowford Community Hosp., Inc.* (11th Cir. 1987) 826 F.2d 1030, 1035. However, "[t]he key concept is the exercise of coercion, dominion, or restraint by the state" (*id.* at pp. 1035-1036) over the victim, and no special relationship has been found where the state has not taken the victim into custody or otherwise assumed responsibility for his or her welfare (see *Estate of Gilmore* v. *Buckley, supra,* 787 F.2d at p. 721). Thus, the state may be responsible for a private-party attack where the victim is incarcerated (see *McKenna* v. *County of Nassau* (E.D.N.Y. 1982) 538 F.Supp. 737; *Mayes* v. *Elrod* (N.D.Ill. 1979) 470 F.Supp. 1188), or is an involuntarily committed mental patient (see *Estate of Connors by Meredith* v. *O'Connor* (9th Cir. 1988) 846 F.2d 1205) or a foster child (see *Taylor By And Through Walker* v. *Ledbetter* (11th Cir. 1987) 818 F.2d 791; *Doe* v. *New York City Dept. of Social Services* (2d Cir. 1981) 649 F.2d 134).[5] But recovery under section 1983 has not been authorized where the victim is a member of the general public. (See, e.g., *Estate of Gilmore* v. *Buckley, supra* [murder by furloughed prisoner]; *Jones* v. *Phyfer* (11th Cir. 1985) 761 F.2d 642 [rape by furloughed prisoner]; *Fox* v. *Custis, supra,* 712 F.2d 84 [criminal acts of parolee]; *Humann* v. *Wilson* (10th Cir. 1983) 696 F.2d 783

---

[5] As noted by the recent Ninth Circuit decision in *Balistreri* v. *Pacifica Police Dept.* (9th Cir. 1988) 855 F.2d 1421, 1425, footnote 4, there is a conflict among the circuits on whether a special relationship may occur outside a custodial situation. (Compare *Estate of Bailey By Oare* v. *County of York* (3d Cir. 1985) 768 F.2d 503 [79 A.L.R.Fed. 495] [child abuse may be actionable under § 1983 even though child not in state custody] with *DeShaney* v. *Winnebago Cty. Dept. of Soc. Services* (7th Cir. 1987) 812 F.2d 298, cert. granted Mar. 21, 1988, 485 U.S. 958 [99 L.Ed.2d 419, 108 S.Ct. 1218] [custodial relationship required in child abuse case].) The *Balistreri* court took the more expansive view, stating that a court may look to "a number of factors" to determine whether a special relationship exists, including "(1) whether the state created or assumed a custodial relationship toward the plaintiff; (2) whether the state was aware of a specific risk of harm to the plaintiff; (3) whether the state affirmatively placed the plaintiff in a position of danger; or (4) whether the state affirmatively committed itself to the protection of the plaintiff." (*Balistreri, supra,* 855 F.2d at p. 1425.) A divided panel in *Balistreri* overturned dismissal of a section 1983 complaint alleging police failure to prevent assaults by an ex-husband because the district court had not considered whether the police had affirmatively undertaken any duty to protect the plaintiff. None of the four factors identified in *Balistreri* are present here. "Affirmatively placing the plaintiff in a position of danger" is a factor stemming from decisions such as *Bowers* v. *DeVito* (7th Cir. 1982) 686 F.2d 616, referring to state action on the victim, not the perpetrator (see also *Wood* v. *Ostrander* (9th Cir. 1988) 851 F.2d 1212 [police officer who impounded car for traffic violation may be liable under § 1983 for rape of passenger he left stranded in high crime area at 2:30 a.m.]).

[rape by inmate of halfway house]; and *Bowers* v. *DeVito, supra*, 686 F.2d 616 [murder by released mental patient].)

The special relationship requirement is derived from the United States Supreme Court's decision in *Martinez* v. *California, supra*, 444 U.S. 277 which rejected a section 1983 claim based on a murder by a parolee where "the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger." (*Id.* at p. 285 [62 L.Ed.2d at p. 489].)[6] The requirement is based on two fundamental propositions. The first is that a section 1983 claimant must have "suffered a deprivation of 'rights, piivileges or immunities secured by the Constitution and laws' of the United States" (*Wideman* v. *Shallowford Community Hosp, Inc., supra,* 826 F.2d at p. 1032). The second is that there is no constitutional right to state services, "even so elementary a service as maintaining law and order" (*Bowers* v. *DeVito, supra,* 686 F.2d at p. 618). Thus, although there is a "constitutional right not to be murdered by a state officer . . . . [Citation.] . . . there is no constitutional right to be protected by the state against being murdered by criminals or madmen." (*Ibid.*) "[T]o break with the *Bowers* . . . line of reasoning . . . would open the way for scrutiny by the federal courts of virtually every municipal decision to reallocate protective resources." (*Jackson* v. *Byrne* (7th Cir. 1984) 738 F.2d 1443, 1447.)

■ Appellants argue that the harm in this case is a less remote consequence of state action than the harm in *Martinez,* where the murder occurred five months after the parolee's release. Appellants also suggest that there is a special relationship between the city and the victims because people living in the vicinity of the hospital faced a greater danger from Jordan than the general public. Such arguments were rejected in *Commonwealth Bank & Trust Co., N.A.* v. *Russell* (3d Cir. 1987) 825 F.2d 12. *Russell* was a section 1983 action brought on behalf of the estates of a couple murdered by a prisoner in the vicinity of a county jail shortly following his escape. Like appellants, the victims' executor in *Russell* alleged that county and municipal officials knew or should have known about "deficiencies in the internal locking mechanisms" of the facility. (*Id.* at p. 13.) The court upheld dismissal of the complaint in this closely related context: "Plaintiff argues that defendants' maintenance of the jail in a

[6] Although this reasoning might support recovery in a situation like *Tarasoff* (see also *Wright* v. *City of Ozark* (11th Cir. 1983) 715 F.2d 1513, 1515 [suggesting that section 1983 liability could be predicated on a special relationship between the victim and the criminal]), at least two courts have held that a private-party attack does not create a cause of action under section 1983 even where the perpetrator posed a special threat to the victim. (See *Estate of Gilmore* v. *Buckley, supra*; and *Jones* v. *Phyfer, supra*; see also *Balistreri* v. *Pacifica Police Dept., supra,* 855 F.2d at p. 1426 [state's awareness of victim's plight, by itself, "probably" does not create a special relationship].) In any event, Jordan did not make prior threats against any of the victims in this case.

condition which made escape likely and the placement of Slingerland, a particularly dangerous prisoner, in that jail when it was in an unsafe condition created a situation that posed an immediate threat to the life and safety of individuals, such as the Lents, who resided in the community surrounding the jail. Plaintiff makes a sympathetic argument. It must fail because the residents in the communities surrounding the jail are part of the 'public at large', referred to in *Martinez*, 444 U.S. at 285, 100 S.Ct. at 559. They cannot reasonably be characterized as individuals who defendants knew 'faced any special danger.' *Id*. Nor do we believe that the brief interval between the escape and the crime in this case is sufficient to distinguish it from *Martinez* where five months elapsed after release before the crime was committed. We read *Martinez* as holding that the key element that was missing was a causal nexus, the same element we find missing here." (*Id*. at p. 16; see also *Ketchum* v. *Alameda County, supra,* 811 F.2d 1243 [rejecting section 1983 claim arising from murder by escaped convict].)

This case is indistinguishable from *Russell* apart from the injection of haldol, which allegedly prompted Jordan to escape. Certain of the cases suggest that a special relationship between the state and the victim is not required if the perpetrator may be viewed as an "agent" of the state. (See *Martinez* v. *California, supra,* 444 U.S. at p. 285 [62 L.Ed.2d at p. 489]; *Estate of Gilmore* v. *Buckley, supra,* 787 F.2d at p. 722.) Appellants contend that the treatment with haldol in effect turned Jordan into an agent of the state within the meaning of these cases. Language on both sides of this apparently novel issue could be marshalled from existing precedents. In a case denying recourse under section 1983 for deaths during a fire department strike, the court observed that "[o]ur analysis would no doubt be different if government officials set the fire or placed forces in motion which ignited the fire that claimed the lives of the [victims]." (*Jackson* v. *Byrne, supra,* 738 F.2d at p. 1446.) Another court, however, refused to impose section 1983 liability notwithstanding allegations that government officials "either negligently or even recklessly facilitate[d] the criminal actions of a third party . . . ." (*Wright* v. *City of Ozark, supra,* 715 F.2d at p. 1516.)

The city could also cite a number of cases rejecting section 1983 claims despite evidence that state action worsened the claimant's situation. (See, e.g., *Milligan* v. *City of Newport News* (4th Cir. 1984) 743 F.2d 227; and *Jackson* v. *City of Joliet* (7th Cir. 1983) 715 F.2d 1200.) There is authority, moreover, that the state action must affect the victim, rather than the perpetrator. In *Wideman* v. *Shallowford Community Hosp., Inc., supra,* 826 F.2d at page 1035, for example, the court stated that "a constitutional duty can arise only when a state or municipality, by exercising a significant degree of custody or control over an individual, places that person in a worse situation than he would have been had the government not acted at

all." (See also *Estate of Gilmore* v. *Buckley, supra,* 787 F.2d at p. 721 ["the state did ·nothing to render Gilmore any more or less capable of defending herself from a violent attacker than any other member of the general public"].) On the basis of these authorities, we would not be inclined to regard Jordan as an agent of the city for purposes of section 1983. We need not resolve the issue, however, because appellants' evidence does not establish that the city was responsible under section 1983 for the treatment that allegedly created the agency relationship.

■ "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (*Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 694 [56 L.Ed.2d 611, 638, 98 S.Ct. 2018].) Cases following *Monell* indicate that a municipality may be liable under section 1983 for its omissions as well as its actions. (See, e.g., *Hitt* v. *Cox* (4th Cir. 1984) 737 F.2d 421, 425; *Avery* v. *County of Burke* (4th Cir. 1981) 660 F.2d 111, 114; *Gibralter* v. *City of New York* (E.D.N.Y. 1985) 612 F.Supp. 125, 130.) ■ Memoranda outlining safety and security problems at the hospital's psychiatric unit were addressed or copied to hospital administrative officials prior to Jordan's escape. These memoranda permit the inference that responsible city officials were aware of such problems and failed to take remedial action. The conditions that enabled Jordan to escape might thus be attributed to a city "custom." (See *Pembauer* v. *Cincinnati* (1986) 475 U.S. 469, 481, fn. 10 [89 L.Ed.2d 452, 464, 106 S.Ct. 1292].) As previously noted, however, similar omissions did not give rise to section 1983 liability in *Commonwealth Bank & Trust Co., N.A.* v. *Russell.*

In order to satisfy the requirements of *Monell* and distinguish Jordan's situation from that of the escaped convict in *Russell,* appellants must show that Jordan's overdose also resulted from a city policy or custom. The record indicates that, as of the morning in question, the hospital had no written policies on the use of medications in doses exceeding manufacturer's recommendations. A hospital physician has testified that such policies are required by law and have since been established. (See Cal. Code Regs., tit.22, § 70577, subd. (d)(4)(D) [requiring guidelines for drugs administered in "unusually high" dosages].) The evidence, however, does not disclose any pattern of overdosage or medical malpractice at the hospital's psychiatric unit.[7] Insofar as it appears from the record, Jordan's overdose was an isolat-

---

[7] Although the city has presented authorities on the issue of inadequate training or supervision of the hospital's employees, we see no evidence of any such inadequacy in the opposition to summary judgment apart from Jordan's treatment.

ed incident. This case is therefore analogous to *Oklahoma City* v. *Tuttle* (1985) 471 U.S. 808 [85 L.Ed.2d 791, 105 S.Ct. 2427], which refused to hold a municipality liable under section 1983 for a single, unusually excessive use of police force. A plurality of the United States Supreme Court reasoned that a contrary result would have been tantamount to finding the municipality liable on the basis of respondeat superior in contravention of *Monell*. (*Id*. at pp. 818, 821 [85 L.Ed.2d at pp. 800-803].) This reasoning has been adopted by courts in every circuit (see generally Annot. (1987) 81 A.L.R.Fed. 549, § 4 and cases cited) and it precludes appellants' 1983 claims in this case.

### III. CONCLUSION

We are mindful of the suffering appellants have experienced and we acknowledge that they have presented a strong case of malfeasance against the city, but our examination of the evidence in light of applicable precedents has disclosed no basis for recovery. The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 31, 1989.