Opinion
 

 YEGAN, J.
 

 In this wrongful death action, appellants contend that the City of San Buenaventura (City) and the County of Ventura (County) and their
 
 *1404
 
 agents, failed to adequately “confine” a patient. Tragically, this patient, Kevin Kolodziej (Kolodziej) walked out of a hospital and stabbed 90-year-old Mrs. Velasta Johnson to death.
 

 The trial court sustained demurrers without leave to amend ruling, inter alia, that the governmental immunity statutes precluded recovery. It also ruled that the cause of action for negligent infliction of emotional distress was barred for lack of contemporaneous observance of the injury-producing event.
 
 (Thing
 
 v.
 
 La Chusa
 
 (1989) 48 Cal.3d 644, 667-668 [257 Cal.Rptr. 865,
 
 111
 
 P.2d 814].) We are compelled to affirm.
 

 On appeal “ ‘[w]e treat the demurrer as admitting all material facts properly pleaded . . . .’ [Citation.]”
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) On January 5, 1992, Kolodziej was admitted to the Ventura County Medical Center (County Hospital) for self-inflicted stab wounds. County Hospital determined that Kolodziej also suffered from psychiatric disorders. A plan was adopted to admit Kolodziej to the Ventura County Mental Health Department (Mental Health) pursuant to Welfare and Institutions Code section 5150
 
 after
 
 he was treated for his stab wounds. This section provides in pertinent part: “When any person, as a result of mental disorder, is a danger to others, or to himself or herself, . . . the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county . . . as a facility for 72-hour treatment and evaluation.” Meanwhile, County attempted to treat his psychiatric disorder while an in-patient at County Hospital.
 

 On January 17, 1992, Kolodziej was still being treated for his stab wounds. He nevertheless walked out of County Hospital and into the adjoining neighborhood. County Hospital immediately notified the City of Ventura Police Department and requested that they locate and return Kolodziej to the County Hospital.
 

 Within the hour, Officers John Snowling and Alex Marquez located Kolodziej and discovered that he had broken into homes in the neighborhood. The officers determined that Kolodziej did not represent a danger to himself or others. Kolodziej promised to walk back to the hospital. The officers allowed him to do so, but did not notify County Hospital. Shortly thereafter, Kolodziej entered Mrs. Johnson’s home and stabbed her with a kitchen knife. Appellants found her minutes later. Mrs. Johnson died as a result of the stab wound.
 

 The first amended complaint alleged that the death was caused by (1) County’s negligence in carrying out the plan to “confine” Kolodziej, (2)
 
 *1405
 
 County’s utilization of inadequate facilities and personnel to care for Kolodziej, and (3) County’s failure to make its employees aware of the danger that Kolodziej posed to himself and others, which in turn resulted in City’s lack of knowledge. The first amended complaint also alleged that City was negligent in failing to inform County Hospital of Kolodziej’s location and its decision not to return him to the hospital. Appellants claimed that the conduct of the police officers proximately caused Mrs. Johnson’s death.
 

 Negligent Infliction of Emotional Distress
 

 Appellants’ cause of action for negligent infliction of emotional distress was properly rejected by the trial court. Absent physical injury or impact to the plaintiff, he or she must be “. . . present at the scene of the injury-producing event at the time it occurs and . . . [be] aware that it is causing injury to the victim . . . .”
 
 (Thing
 
 v.
 
 La Chusa, supra,
 
 48 Cal.3d 644, 647;
 
 Burgess
 
 v.
 
 Superior Court
 
 (1992) 2 Cal.4th 1064, 1073 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) This bright line rule circumscribes the class of “bystanders” who may recover damages for negligent infliction of emotional distress.
 

 Appellants alleged “[w]hile they were outside and Velasta Johnson was alone in the Johnson residence Kolodziej entered the Johnson residence, stabbed Velasta Johnson, seated her in a living room chair, and then left the Johnson residence.” Appellants claim to be within the class of “bystanders” permitted to recover because they arrived shortly thereafter and saw Mrs. Johnson as she suffered. Crediting appellants’ theory would blur if not obliterate the bright line rule established by our Supreme Court.
 

 In
 
 Ebarb
 
 v.
 
 Woodbridge Park Assn.
 
 (1985) 164 Cal.App.3d 781 [210 Cal.Rptr. 751], the decedent’s sister was summoned home because of an accident. Upon her arrival, she was advised that her brother was dead. His arm had become lodged in a spa drain and he had drowned. The sister did not witness the actual drowning. She saw her brother floating in the spa as a man tried to extricate the decedent’s arm from the drain.
 
 (Id.,
 
 at pp. 782-783.)
 

 We held that recovery for negligent infliction of emotional distress was not permitted for “. . . a family member who witnesses the
 
 result
 
 or the
 
 effects
 
 of an accident and not the accident itself.”
 
 (Ebarb
 
 v.
 
 Woodbridge Park Assn., supra,
 
 164 Cal.App.3d at p. 783.) Appellants cannot state a cause of action for negligent infliction of emotional distress.
 

 
 *1406
 

 Liability of the City
 

 The trial court expressly ruled that City owed no duty to Kolodziej or Mrs. Johnson. The ruling was correct. Appellant’s reliance on Restatement Second of Torts section 324A is misplaced. This section provides: “One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if [j[] (a) his failure to exercise reasonable care increases the risk of such harm, or H] (b) he has undertaken to perform a duty owed by the other to the third person, or [1] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.”
 

 “[Section 324A] (applies to situations where a defendant has undertaken, either gratuitously or for consideration, to render services to another for the protection of
 
 that other’s
 
 person or things, rather than a third person’s person or things). . . .”
 
 (Williams
 
 v.
 
 Saga Enterprises, Inc.
 
 (1990) 225 Cal.App.3d 142, 152 [274 Cal.Rptr. 901].) Here, the City provided a service to the County, not the decedent. The fact that City responded to the hospital’s call created no special relationship or duty of care to the general public which included Mrs. Johnson. (See,
 
 Williams
 
 v.
 
 State of California
 
 (1983) 34 Cal.3d 18, 24 [192 Cal.Rptr. 233, 664 P.2d 137].) Here there was no “' . . indication that the police had induced decedent’s reliance on a promise, express or implied, that they would provide her with protection, [and] it must be concluded that no special relationship existed and that appellant has not stated a cause of action.’ [Citations.]”
 
 (Davidson
 
 v.
 
 City of Westminster
 
 (1982) 32 Cal.3d 197, 206 [185 Cal.Rptr. 252, 649 P.2d 894].) The decision not to inform County Hospital of Kolodziej’s whereabouts and to allow him to walk back to the hospital did not
 
 increase
 
 the risk of harm. The decision to allow him to walk back to County Hospital left Kolodziej and Mrs. Johnson as they were.
 

 The cause of action for wrongful death against City is also barred by principles of sovereign immunity. Government Code section 815 provides: “Except as otherwise provided by statute: [f] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [][] (b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person.”
 

 Government Code section 820.2 states: “Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or
 
 *1407
 
 omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.”
 

 Welfare & Institutions Code, former section 5154 provided in relevant part: “The professional person in charge of the facility providing 72-hour treatment and evaluation, his designee, and the peace officer responsible for the detainment of the person shall not be held civilly or criminally liable for any action by a person released at or before the end of 72 hours pursuant to this article.” (Now see Welf. & Inst. Code, § 5154, subd. (c) [“The peace officer responsible for the detainment of the person shall not be held civilly or criminally liable for any action by a person released at or before the end of 72 hours pursuant to this article.”].)
 

 Tarasoff
 
 v.
 
 Regents of University of California
 
 (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] bars any action against the police officers. In
 
 Tarasoff
 
 an outpatient threatened to kill the victim during a counseling session. The treating psychologist called the campus police and asked them to detain him. The police took the patient into custody but released him based on his promise to stay away from the victim.
 
 (Id.,
 
 at p. 432.) The patient later killed the victim.
 

 The
 
 Tarasoff
 
 court pointed out that the Lanterman-Petris-Short Act (LPS) conferred immunity because the request to find and detain the patient was tantamount to a LPS hold. (Welf. & Inst. Code, § 5154.) The Supreme Court held that “. . . the defendant police officers are immune from liability for releasing . . . [the patient] after his brief confinement.... The source of their immunity is section 5154 of the Welfare and Institutions Code, which declares that: ‘[t]he professional person in charge of the facility providing 72-hour treatment and evaluation, his designee,
 
 and the peace officer responsible for the detainment of the person
 
 shall not be held civilly or criminally liable for any action by a person released at or before the end of 72 hours . . . .’ ”
 
 (Tarasoff
 
 v.
 
 Regents of University of California, supra,
 
 17 Cal.3d at p. 449.)
 

 The facts in
 
 Tarasoff
 
 are similar to the instant case. Here a plan was adopted by County to commit Kolodziej
 
 after
 
 he was treated at County Hospital. When Kolodziej left the hospital, County requested that the police detain and return him. The officers released Kolodziej based on his promise to walk back to the hospital. The officers’ discretionary actions are immunized by Welfare and Institutions Code section 5154.
 

 Liability of the County
 

 County is also immune from liability for injuries occurring after Kolodziej left the hospital. The cause of action for wrongful death against
 
 *1408
 
 the County is barred by
 
 Tarasoff
 
 and Government Code sections 856, subdivision (a), and 856.2. Section 856, subdivision (a), in pertinent part, provides: “(a) Neither a public entity nor a public employee acting within the scope of his employment is liable for any injury resulting from determining in accordance with any applicable enactment: [j[] (1) Whether to confine a person for mental illness or addiction. [][] (2) The terms and conditions of confinement for mental illness or addiction.”
 

 Government Code section 856.2, subdivision (a), provides: “(a) Neither a public entity nor a public employee is liable for: H] (1) An injury caused by an escaping or escaped person who has been confined for mental illness or addiction, (2) An injury to, or the wrongful death of, an escaping or escaped person who has been confined for mental illness or addiction.”
 

 The Supreme Court in
 
 Tarasoff held
 
 that “. . . the scope of the immunity extends not only to the final determination to confine or not to confine the person for mental illness, but to all determinations involved in the process of commitment. [Citation.]”
 
 (Tarasoff
 
 v.
 
 Regents of University of California, supra,
 
 17 Cal.3d at p. 448.)
 

 In California Government Tort Liability Practice (Cont.Ed.Bar 1980) Professor Van Alstyne commented that, notwithstanding Government Code section 856.2, “. . . liability might obtain for injuries inflicted on third parties by the escaped mental patient if an independent basis of fault existed, apart from any wrongful act or omission that made the escape possible.” (At § 4.51, p. 407.)
 

 Subsequently, in
 
 Buenavista
 
 v.
 
 City and County of San Francisco
 
 (1989) 207 Cal.App.3d 1168, 1173-1174 [255 Cal.Rptr. 329], the Court of Appeal observed that no court had applied
 
 Tarasoff
 
 in such an expansive manner. The court indicated that absent a threat to a specific individual,
 
 Tarasoff
 
 would bar liability for negligent failure to warn.
 
 (Id.,
 
 at p. 1174.) We agree with
 
 Buenavista
 
 v.
 
 City and County of San Francisco, supra.
 
 There is no duty to warn the general public and such warning would be impossible.
 

 Appellant argues that Government Code section 856.2 immunity does not apply because the plan to “confine” and treat Kolodziej’s mental problems never materialized. We disagree. Kolodziej received psychiatric treatment at County Hospital.
 
 [1]
 

 For purposes of Government Code section 856.2, the term “confined” applies to persons voluntarily or temporarily admitted for treatment.
 
 *1409
 
 The statute is not limited to persons who are “confined” in a lock-up facility. In
 
 Forde
 
 v.
 
 County of Los Angeles
 
 (1976) 64 Cal.App.3d 477, 480-481 [134 Cal.Rptr. 549], the Court of Appeal held that a county was immune from liability for injuries caused by a patient who was voluntarily “confined” and escaped from a county hospital. Section 856.2 immunity has also been applied to patients left unrestrained in a waiting area
 
 (Buenavista
 
 v.
 
 City and County of San Francisco, supra,
 
 207 Cal.App.3d 1168, 1171) and patients who escape from a county medical center.
 
 (Los Angeles County-U.S.C. Medical Center
 
 v.
 
 Superior Court
 
 (1984) 155 Cal.App.3d 454, 463 [202 Cal.Rptr. 222].)
 

 Appellants maintain that County has liability pursuant to Government Code section 856, subdivision (c). This section provides: “(c) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in carrying out or failing to carry out: [][] (1) A determination to confine or not to confine a person for mental illness or addiction. [S[] (2) The terms or conditions of confinement of a person for mental illness or addiction. [1] (3) A determination to parole, grant a leave of absence to, or release a person confined for mental illness or addiction.”
 

 The 1963 Law Revision Commission comment states: “Liability may be imposed, however, for failure to use reasonable care in carrying out whatever determination has been made, for the act or omission causing injury in this case would be a departure from a defined standard of care.” (See Cal. Law Revision Com. com., 32 West’s Ann. Gov. Code, § 856 (1980) p. 441.)
 

 Appellants claim that County’s failure to implement the plan to confine is a basis for liability. We disagree. Government Code section 856, subdivision (c), applies to public employees, not public entities. The Law Revision Commission comment, read in the context of the section to which it is appended, refers to public employee liability. Were we to credit appellant’s theory, the immunity set forth in Government Code section 856, subdivision (a), would be eviscerated. (See,
 
 ante,
 
 pp. 1408-1409.)
 

 
 *1410
 
 County and its agents were not negligent in carrying out the plan to “confine” Kolodziej. As indicated, the first amended complaint alleged that County Hospital and its agents “. . . adopted a plan to confine Kolodziej at . . . [Mental Health]
 
 after
 
 the treatment for his physical injuries was completed at. . . [County Hospital].” The decision to place Kolodziej on a LPS hold at a later date because of his physical problems was one of the intermediate “. . . determinations involved in the process of commitment. [Citation.]”
 
 (Tarasoff
 
 v.
 
 Regents of University of California, supra,
 
 17 Cal. 3d at p. 448.)
 

 Conclusion
 

 We do not fault appellants’ attempt to navigate through the governmental immunity statutes. However, no matter how artful the pleading, the gist of the complaint is that Kolodziej should have been locked up or shackled while a patient at County Hospital. This goes to the “terms or conditions of confinement” for which there is immunity. (Gov. Code, § 856, subd. (a)(2).)
 

 Consistent with statutory and decisional law, we affirm the judgment. We nevertheless sympathize with appellants. “Immunity is extended ... because reasonable decisions as to how to control particular patients should not be chilled, at the time they are made, by the prospect of liability.”
 
 (Brookhouser
 
 v.
 
 State of California
 
 (1992) 10 Cal.App.4th 1665, 1686 [13 Cal.Rptr.2d 658].) We do not minimize the tragedy which could have been avoided. We simply observe that the Legislature has determined that the benefits to society from governmental immunity preclude recovery.
 

 The judgment is affirmed.
 

 Stone (S. J.), P. J., and Gilbert, J., concurred.
 

 [1]
 

 The governmental claim filed by appellant stated: “During the course of his hospitalization, personnel of Ventura County Medical Center (“VCMC”) and Ventura County Mental Health (“VCMH”) determined that Kevin Kolodziej was also suffering from severe psychi
 
 *1409
 
 atric disorders that caused him to be a danger to himself and others. Personnel of VCMC and VCMH also determined that Kevin Kolodziej required treatment for his psychiatric problems and should be confined in an institution pursuant to
 
 Health and Safety Code
 
 [Welf. & Inst Code] § 5150 for treatment of this condition. However, rather than confine Kevin Kolodziej immediately in an appropriate facility, personnel of VCMC and VCMH adopted a plan pursuant to which Kevin Kolodziej would be admitted to and confined in VCMH’s facility only after VCMC had completed the medical treatment it was providing for Kevin Kolodziej’s physical injuries, and that in the meantime VCMH would attempt to treat Kevin Kolodziej’s psychiatric disorders while Kevin Kolodziej was still an in-patient at VCMC