Filed 6/3/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re | E072797 |
| ALAN REED DOHNER | (Super.Ct.No. BLC1700076) |
| on Habeas Corpus. | The County of Riverside |
| In re | E074872 |
| WILLIAM RENO GERBER | (Super.Ct.No. BLC1700076) |
| on Habeas Corpus. | The County of Riverside |
| | OPINION |

ORIGINAL PROCEEDINGS; petition for writ of habeas corpus. Russell L. Moore, Judge. Petition Denied.

Alan Reed Dohner, in pro per., for Petitioner, Alan Reed Dohner.

William Reno Gerber, in pro per., for Petitioner, William Reno Gerber.

Rob Bonta, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Linnea D. Piazza, Deputy Attorneys General, for Respondent.

The briefing in this appeal raises an array of legal issues, but the fundamental dispute underlying them is straightforward. Plaintiffs and appellants Alan Reed Dohner

1

and William Reno Gerber were, when their lawsuits were filed, general population inmates living in dormitory housing at Chuckawalla Valley State Prison (CVSP). They assert that they have the right to possess a personal television in their cells, rather than being limited to shared televisions located in common areas. They raise various claims flowing from the enforcement of the regulations that prohibited them from doing so.[1] The trial court rejected all the claims, denying their request for a writ of habeas corpus without issuing an order to show cause and sustaining respondents' demurrer to their claims for a writ of mandate and declaratory relief. We find no fault in the trial court's rulings.

## I.  BACKGROUND

Inmates in California prisons "may possess only the personal property . . . as permitted" by regulation. (Cal. Code Regs., tit. 15, § 3006.) A list of "[s]pecific items of personal and religious property" that an inmate is permitted to possess, depending on classification and privilege level, has been "established by a consensus of individual facilities" and described in an "Authorized Personal Property Schedule" (APPS) that is incorporated by reference into the relevant regulation. (Cal. Code Regs., tit. 15, § 3190.) Individual facilities, however, may request and obtain from the California Department of Corrections and Rehabilitation (CDCR) exemptions from that standardized list. (Cal.

---

[1] We use the past tense intentionally, as both Dohner and Gerber have since been transferred to other facilities that impose no such restriction.

Code Regs., tit. 15, § 3190, subd. (b) [contemplating "[l]ocal facility exemptions to the property lists," to be identified in the APPS].)

Under the APPS applicable to general population prisoners like Dohner and Gerber, inmates often may possess a television.[2] That is not true, however, at CVSP. CDCR granted CVSP's request for a local exemption that excludes televisions (among other things) from the property permitted to inmates in dormitory housing at that facility.[3] According to CVSP's exemption request, made and granted in 2005, there is "little or no reception" for television signals due to the prison's location, and though CVSP "uses a satellite for general TV broadcasting," the dormitory housing units "are not equipped for cable." Moreover, at the time, the prison was struggling with an electrical system that was already overloaded, so additional electrical appliances would risk "major power black outs" that, due to extreme weather conditions in summer months, could be dangerous to the health of staff and inmates. The electrical system has since been improved, but the reception for television signals has not. Inmates who possess a television when they are transferred to CVSP from a facility that permits them are given the option of mailing it home at their own expense or disposing of it.

---

[2] The APPS is updated from time to time, and the version in our record is not the most recent version. (See Cal. Code Regs., tit. 15, § 3190, subd. (b) [APPS to be updated "no more frequently than twice yearly"; current version "(Rev. 7/6/20)"].) No party has argued that the current APPS is different from the one in our record in any relevant respect.

[3] Although petitioners present this limitation as unique, the list of granted exemptions shows a number of other facilities also obtained similar exemptions for at least some of their housing units.

Dohner brought this suit against CDCR, as well as the individuals serving as CDCR Secretary and CVSP Warden, in April 2017.[4] Dohner's petition sought, in the alternative, a writ of habeas corpus or writ of mandate, and requested declaratory relief. In June 2017, Dohner, Gerber, and six other CVSP inmates filed a joint first amended petition.

After informal briefing and argument from the parties, the trial court denied the request for a writ of habeas corpus without issuing an order to show cause. Subsequently, the trial court sustained respondents' demurrer to the remaining claims of the first amended petition with leave to amend. Dohner filed a second amended petition naming the same parties, but he was the only petitioner who verified it.[5] The trial court sustained respondents' demurrer to the second amended petition without leave to amend as to Dohner, but granted Gerber and the other six petitioners leave to amend. Nevertheless, neither Gerber, nor any other petitioner filed an amended petition, so the court dismissed their claims with prejudice.

---

[4] Since that time, the CDCR Secretary and the CVSP Warden have changed. Thus, Kathleen Allison is now defendant and respondent in her capacity as the current CDCR Secretary, replacing former CDCR Secretary Ralph Diaz. Similarly, David Holbrook is now defendant and respondent in his capacity as the current CVSP Warden, in place of former CVSP Warden Charles Callahan.

[5] On appeal, Dohner asserts that he was the only signatory because "it had proven impossible to get the signatures of all 7 Co-Petitioners," an assertion that Gerber joins, along with the rest of Dohner's briefing.

Dohner and Gerber appealed separately.[6]  Both filed motions requesting that we consolidate their appeals, which we granted.

## II.  DISCUSSION

"[I]n noncapital cases, if the superior court denies a petition for a writ of habeas corpus, the petitioner has no statutory right to appeal.  Instead, the petitioner must file a new, original petition, generally in the Court of Appeal."  (*Robinson v. Lewis* (2020) 9 Cal.5th 883, 895.)  Respondents argue on this basis that we should not consider the merits of Dohner and Gerber's constitutional claims, which were pleaded as a petition for writ of habeas corpus.  We have discretion, however, to deem an appeal from the denial of a petition for writ of habeas corpus to be an original habeas petition filed in this court.  (See *People v. Gallardo* (2000) 77 Cal.App.4th 971, 986; *People v. Garrett* (1998) 67 Cal.App.4th 1419, 1423.)  In this case, unlike many, the interest of judicial economy weighs in favor of deciding the merits now, and there is no need to further develop the record, so we choose to exercise that discretion.

Dohner and Gerber's contentions in habeas that various constitutional rights are violated by CVSP's prohibition on possessing a personal television fail on the merits.  They have not cited any case that holds there is a constitutionally protected right to watch television *at all* while incarcerated or detained, let alone the right to possess a personal television so programs can be watched privately, rather than on a shared television.  On

---

[6]  Gerber filed his notice of appeal prematurely, before judgment had been entered against him, but we issued an order deeming the premature notice of appeal to have been filed after entry of judgment.

the contrary, to our knowledge, courts have universally rejected such arguments.[7] (See, e.g., *Rahman X v. Morgan* (8th Cir. 2002) 300 F.3d 970, 973-974 [no denial of due process or cruel and unusual punishment from inmate's lack of access to television in his cell]; *Murphy v. Walker* (7th Cir. 1995) 51 F.3d 714, 718, fn. 8 [denial of television not a constitutional violation]; *More v. Farrier* (8th Cir. 1993) 984 F.2d 269, 271 ["Despite television's importance in modern society, appellees have no fundamental right to in-cell cable television"]; *James v. Milwaukee County* (7th Cir. 1992) 956 F.2d 696, 699 [denial of television does not constitute a cognizable civil rights claim]; *Montana v. Commissioners Court* (5th Cir. 1981) 659 F.2d 19, 23 [claims relating to usage of radio and television did not pertain to federal constitutional rights and were properly dismissed as frivolous]; *Kesling v. Tewalt* (D. Idaho 2020) 476 F.Supp.3d 1077, 1086 ["[T]here is no constitutional right to watch television in prison"]; *Rawls v. Sundquist* (M.D. Tenn. 1996) 929 F.Supp. 284, 288 ["There is no constitutional right to television while incarcerated"].)

As Dohner and Gerber note, the United States Supreme Court has, in a variety of contexts, found the First Amendment to guarantee "'not only the right to speak and publish but also the right to hear, to learn, to know.'" (*Presidents Council, Dist. 25 v. Community School Board No. 25* (1972) 409 U.S. 998, 999 (Douglas, J., dissenting from

---

[7] Petitioners' claims are framed primarily in terms of the United States Constitution, so we look primarily to federal law to determine their viability. (See *Buenavista v. City and County of San Francisco* (1989) 207 Cal.App.3d 1168, 1174.) But there is no more authority in support of their claims under analogous state constitutional provisions.

denial of certiorari) [case involving school board resolution banning a particular book from circulation in school libraries]; see, e.g., *Stanley v. Georgia* (1969) 394 U.S. 557, 568 [holding that the "First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime"]; *Martin v. City of Struthers* (1943) 319 U.S. 141, 142-144, 149 [finding ordinance prohibiting door-to-door distribution of leaflets or other advertisements to be unconstitutional].)  Such authority does not apply here, however, at least in the manner Dohner and Gerber have proposed, to guarantee inmates access to any particular source of information from the relative privacy of their own cells. (See, e.g., *Hudson v. Palmer* (1984) 468 U.S. 517, 527-528 [a prison "'shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room,'" and "We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement'"]; *Jones v. North Carolina Prisoners' Labor Union, Inc.* (1977) 433 U.S. 119, 125 ["this Court has long recognized that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights' [...] including those derived from the First Amendment"].)

Relatedly, although inmates retain some property rights while in prison, those rights do not extend to *possessing* any particular item of personal property, including a television.  (See *In re Alcala* (1990) 222 Cal.App.3d 345, 371 [Pen. Code section 2601 sets out "specific rights of prisoners '[t]o inherit, own, sell, or convey real or personal property,'" but "[does] not include the right to wear, keep, and use his or her own personal possessions in prison.  This legislative omission is significant"].)  There is no

authority in support of the proposition that requiring inmates transferred to CVSP to mail home or dispose of property they are not permitted to possess at CVSP amounts to an "unconstitutional taking," as Dohner and Gerber would have it.

Reframing the issue as one of access to a particular television channel (CDCR's educational channel), rather than to television broadcasts generally or the television itself as a physical possession, is no more persuasive. Under the United States Constitution, inmates have no *constitutional* right to rehabilitative or educational programs, which would include programs delivered by television, though of course the government may choose as a matter of policy to make such resources available by one method or another. (See *Moody v. Daggett* (1976) 429 U.S. 78, 88, fn. 9; *Rizzo v. Dawson* (9th Cir. 1985) 778 F.2d 527, 530-531.) Similarly, the California Constitution gives CDCR the "*authority* to award credits earned for good behavior and approved rehabilitative or educational achievements." (Cal. Const., art. I, § 32, subd. (2) (italics added).) But it does not *require* CDCR to provide rehabilitative or educational programs by any particular means, as Dohner and Gerber would have it. No caselaw supports the notion that the California constitution's guarantee of "right of access to information *concerning the conduct of the people's business*" (Cal. Const., art. I, § 3, subd. (b)(1), italics added) may be recast as a general right of "access to [rehabilitative] information" that includes the right to access CDCR's educational channel from a personal television in one's prison cell.

Dohner and Gerber cite only inapposite law in their efforts to establish that their constitutional rights are implicated by the rule against possessing personal televisions at CVSP. For example, in *Turner v. Safley* (1987) 482 U.S. 78 (*Turner*), the United States Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," and articulated factors to consider in making that determination. (*Id.* at pp. 89-91.) As we have discussed, however, no constitutional right is impinged upon by the prison regulation at issue here, so the *Turner* analysis is inapplicable.[8] In *Packingham v. North Carolina* (2017) 137 S.Ct 1730, the United States Supreme court addressed the constitutionality of a state statute that prohibited convicted sex offenders from accessing social networking websites *after* their release from prison. (*Id.* at pp. 1733-1734.) The case has no application to inmates' access to television during their incarceration. *Sandin v. Conner* (1995) 515 U.S. 472 considers inmates' "liberty interest protected by the Due Process Clause" in relation to punishments imposed under prison regulations for disciplinary infractions. (*Id.* at p. 474.) Again, the analysis has no bearing on this case. Similarly, although Dohner and Gerber cite various cases for general equal protection

---

[8] Moreover, even if the *Turner* analysis did apply, the record shows there to be legitimate penological interests underlying the prohibition on inmates possessing a personal television at CVSP. The facility has little or no television reception due to its location, and its dormitory housing is not equipped for cable. The penological interest in prohibiting inmates from possessing relatively large, heavy objects made out of metal, plastic, and glass that, due to the characteristics of the particular facility, cannot serve in their intended function, is obvious and compelling.

9

principles, none holds or suggests that equal protection is implicated by the circumstance that televisions are contraband at CVSP, but not at other prisons (or some portions of them) in the state.

In short, the trial court was correct to decline to order a writ of habeas corpus be issued.

The trial court was also correct to find that Dohner and Gerber had not pleaded a viable claim for writ of mandate.[9] A writ of ordinary mandate is available "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085, subd. (a).) "'Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citations].'" (*Moran v. Cal. Dept. of Motor Vehicles* (2006) 139 Cal.App.4th 688, 691 (*Moran*).) "Where the alleged ministerial duty would be contrary to law, mandate is unavailable." (*Ibid.*) "It must also be shown the remedy at law is inadequate." (*Ibid.*; see Code Civ. Proc., § 1086.)

If anything, respondents have a ministerial duty *not* to permit CVSP inmates to possess televisions. As discussed above, the APPS incorporated by reference into the relevant regulation reflects a granted exemption request, such that inmates may not possess personal televisions in dormitory housing at CVSP. Thus, the purported

---

[9] Again, in the interest of judicial economy, we choose to address the merits of Dohner and Gerber's mandate claim, rather than respondents' arguments that the claims should be rejected on various procedural bases.

10

ministerial duty alleged by Dohner and Gerber would be contrary to law, and mandate is unavailable. (*Moran*, *supra*, 139 Cal.App.4th at p. 691.)

Dohner and Gerber propose that the APPS, or at least the section of it describing CVSP's granted exemption request, is an invalid "underground" regulation because it is incorporated by reference into the Code of Regulations, rather than published in full within it. This argument is without merit. (See *Kings Rehabilitation Center, Inc. v. Premo* (1999) 69 Cal.App.4th 215, 220 ["we find the practice of incorporation by reference to be lawful"]; Cal. Code Regs., tit. 1, § 20 [defining "Incorporation by reference" and describing requirements for materials to be incorporated by reference into the Code of Regulations]; *id.*, tit. 15, § 3190, subd. (b) [expressly contemplating APPS will be incorporated by reference].) We disagree with Dohner and Gerber's bald assertion that it would not be "cumbersome, unduly expensive, or otherwise impractical" to publish the APPS within the text of the regulation; the version in our record is 64 pages, even in quite small print. (Cal. Code Regs., tit. 1, § 20, subd. (c)(1).) Moreover, changes to the APPS are adopted by means of the formal APA process. (Cal. Code Regs., tit. 15, § 3190, subd. (b).) There is simply nothing "underground" about the APPS. And respondents have a duty to enforce regulations regarding what property is allowed to inmates at CVSP, including documents incorporated into those regulations by reference, not disregard them, as Dohner and Gerber would have them do.

11

Dohner and Gerber further propose that respondents violated ministerial duties arising from a variety of constitutional and statutory provisions that in general ways at least arguably tend to support providing inmates with rehabilitative and educational opportunities.[10]  To give rise to a ministerial duty, however, a constitutional or statutory provision must identify a "clear, nondiscretionary duty . . . to act upon the facts alleged or an abuse of discretion in how [respondents] chose to act." (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 915.)  "To construe a statute [or constitutional provision] as imposing a mandatory duty on a public entity, 'the mandatory nature of the duty must be phrased in explicit and forceful language.'" (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 689.)  Moreover, "'[i]t is not enough that some statute [or constitutional provision] contains mandatory language.  In order to recover plaintiffs have to show that there is some *specific* statutory mandate that was violated by the [public entity.]'" (*Ibid.*)  "Thus, 'the enactment at issue [must] be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken.'" (*Ibid.*)  Not one of the constitutional or statutory provisions identified by Dohner and Gerber, or any other constitutional or statutory provision, specifically requires respondents to allow inmates to possess personal televisions at CVSP or to make the infrastructure changes to CVSP that would be required to have such televisions work.

Dohner and Gerber further contend that respondents have a ministerial duty to compensate inmates for televisions and their accessories that they were permitted to

possess at other prisons but were not permitted to retain once they were transferred to CVSP. Not so. At CVSP, televisions are contraband, no matter whether they are permitted at other prisons. (Cal. Code Regs., tit. 15, § 3000 ["[c]ontraband" includes "anything which is not permitted"].) Respondents do not have a ministerial duty "to return, replace, or compensate an inmate for property confiscated as contraband." (*Flores v. Dept. of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 207.) Moreover, inmates transferred to CVSP are given the option of mailing home any television they may have been allowed to possess at another prison, instead of having it be disposed of as contraband.

Thus, Dohner and Gerber have not demonstrated any ministerial duty that respondents failed to fulfill related to inmate television access at CVSP, so the trial court was correct to dismiss on demurrer their claim for a writ of mandate. We therefore need not address, for example, whether Dohner and Gerber continue to have a beneficial interest in the performance of such a duty despite their transfers to other prisons, whether they exhausted their administrative remedies, or whether they had an adequate remedy at law.

The trial court was also correct to dismiss on demurrer Dohner and Gerber's claim for declaratory relief. (See *Coachella Valley Unified School Dist. v. State of California*

---

[10] These include the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution; Article I, sections 1, 2, 3, 7, 13, 17, 19, and 32 of the California Constitution; and Penal Code sections 667.1, 667.2, 2600, 2601, 2930, 2931, 2932, 2933.05, 5054, 5058, and 5068.

(2009) 176 Cal.App.4th 93, 125-126 [complaint seeking issuance of writ and declaratory relief based on same underlying facts did not state separate causes of action, but asked for different forms of relief; where facts alleged do not state cause of action for issuance of writ, declaratory relief is also unavailable].)

Finally, Dohner and Gerber assert in briefing on appeal that they were denied meaningful access to the court based on various retaliatory and harassing acts taken against them for engaging in the present litigation. We agree that "'[p]rison walls are a powerful restraint on a litigant wishing to appear in a civil proceeding'" and "all courts have an obligation to ensure those walls do not stand in the way of affording litigants with bona fide claims the opportunity to be heard." (*Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, 1487, quoting *Hoversten v. Superior Court* (1999) 74 Cal.App.4th 636, 640.) Nevertheless, there is nothing to suggest that Dohner and Gerber's claims were not fully and fairly heard, in the trial court or in this court. It is not apparent how any additional hearings to develop the factual record, or additional opportunities for Dohner and Gerber to argue the merits of their claims, would make a difference. The record, indeed, is already voluminous, and Dohner and Gerber have not identified anything they would like to add to it. As discussed above, our analysis turns on legal issues, not factual ones, as the relevant underlying facts are undisputed. Dohner and Gerber have managed to brief those legal issues at some length, both here and in the trial

14

court, despite various alleged impediments.[11]  We therefore are not persuaded that they were denied fair hearing of their claims related to television access at CVSP, so as to require any remedy to effectuate their right of meaningful access to the courts.

Moreover, Dohner and Gerber's allegations of harassment and retaliation motivated by their participation in this litigation were not raised in their pleadings or otherwise presented in an appropriate manner to the trial court (for example, in a noticed motion for sanctions).[12]  There is therefore no decision by the trial court related to such issues for us to review.  We offer no opinion as to whether those allegations, which are not properly before us, could give rise to viable claims of one sort or another if asserted in separate litigation.

## III.  DISPOSITION

We treat Dohner's and Gerber's appeals from the trial court's denial of their petition for a writ of habeas corpus as original petitions for a writ of habeas corpus, and we deny them on the merits.  We affirm the trial court's rulings sustaining respondents'

---

[11]  Gerber did not elect to file an opening brief on appeal of his own, but instead joined in Dohner's brief.  He attributed this decision not to any harassment or retaliation by respondents or their agents, but rather to disruptions caused by the pandemic and both his and Dohner's medical conditions.

[12]  Dohner often asserted some of the alleged underlying facts in briefing (as he did in his appellate briefing) or at oral argument on other matters, but the issue of retaliation and harassment was never made a part of Dohner's or Gerber's petitions or otherwise formally presented for determination.  For example, Dohner complained of related issues in an ex parte application in June 21, 2017, but ultimately requested only an order requiring his transportation to a hearing.  In November 2018, the trial court expressed its willingness to "hear any timely motions that are properly served" related to such issues.  There were no such motions filed or served.

demurrers to Dohner and Gerber's remaining claims.  In the interests of justice, the parties shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.
FIELDS
J.

16